. NICHOLAS HANRICK ET AL. v. E. J. GURLEY ET AL.

No. 804. Decided March 29, 1900.

I. Descent—Aliens—Cases Followed.

Aliens, subjects of Great Britain and heirs of one dying in 1865, inherited, under the laws then in force, a defeasible estate in his lands in Texas (Constitution of Republic, General Provisions, section 10; Act January 28, 1840; Hartley's Digest, article 585; Act March 18, 1848, section 9; Paschal's Digest, article 44; Act February 13, 1854),·which, by section 2 of last named act, enabling aliens to inherit where citizens of the United States were permitted to do so by the laws of the country of such alien, became indefeasible on the passage of the Act of Parliament of 1870, permitting aliens to inherit lands in Great Britain. Following Hanrick v. Hanrick, 54 Texas, 101, 61 Texas, 596; Hanrick v. Hanrick, 63 Texas, 623; Hanrick v. Patrick, 119 U. S., 156. (P. 467.)

2. Limitation—Amendment—Equitable Title.

An amendment to a petition in trespass to try title, attacking conveyances to adverse claimants as being in trust for the plaintiffs, did not assert a new cause of action against which limitation ran till the amendment was filed; plaintiffs could have recovered on their equitable title under the original petition. (P. 467.)

3. Limitation—Findings of Fact—Practice on Appeal.

Where the facts found by the trial judge did not establish the defense of limitation, and were not attacked, defendant can not avail himself of error in the rulings of law upon such defense. (Pp. 467, 468.)

4. Res Judicata—Judgment Against Trustee—When Binding Beneficiaries.

A recovery of an undivided one-third of land claimed by a plaintiff in his own right does not bar a subsequent suit against the same defendant by equitable owners for whom the plaintiff in the first suit then held the legal title in trust, where such title was not asserted therein. (P. 468.)

**5. Partition—Parties.**

Where, in a suit for partition of lands, plaintiffs acquiesce in conveyances, made by defendant, of a part of the lands owned in common, the court has jurisdiction to partition the remainder, and defendant can not complain because such grantees are not before it. (Pp. 468, 469.)

**6. Innocent Purchaser—Inadequate Price.**

Gross inadequacy of price may constitute evidence to support a finding that one is not an innocent purchaser, though without other notice of adverse title. (P. 469.)

**7. Notice—Purchaser Pendente Lite.**

A purchaser is not affected with notice, under doctrine of lis pendens, by the fact that an amendment making his vendor a party had been filed before he bought the land, but no service of process had then been had on such vendor. (P. 469.)

**8. Same—Appearance—Agency.**

Authority to take proceedings to recover possession and obtain title to land, authorized the employment of an attorney to enter appearance in a pending suit, and a mortgagee of the interest of such party after appearance entered, without service of process, was charged with notice of the proceedings. (Pp. 469, 470.)

**9. Deed—Contract to Convey—Right to Select—Registration.**

Deeds conveying to the grantee 5000 acres to be selected by him out of any lands which should be set apart to the grantors out of the partition of a certain estate, vested neither present title in any particular part of such lands, nor an undivided interest in any land, being, in effect, merely contracts to convey when partitioned and selected: but they were valid contracts conferring a right to select the land, and requiring conveyance when it should be ascertained; were entitled to registration; were sufficient, when recorded, to protect such right against subsequent purchasers from the grantors; and were not void for want of description. (Pp. 470, 471.)

**10. Estates—Foreclosure—Parties.**

Foreclosure and sale, in the settlement of an estate, under a mortgage given by a decedent who had conveyed away all interest in the land in her lifetime, did not affect the rights of such purchasers from her who were not made parties to the proceedings. (Pp. 471, 472.)

**11. Same—Superior Title—Lien Reserved.**

The fact that the sale by a decedent reserved an express lien for a part of the purchase money, might leave such title in her estate as would give the probate court jurisdiction to order a foreclosure; but this principle can not be invoked to sustain the sale in probate, in the absence of proof that the purchase money notes remained unpaid. (P. 472.)

**12. Limitation—Judgment—Claims Against Estates.**

Since a mortgage subsists so long as the debt is not barred, and such debt is merged in a judgment establishing it as a claim against the estate of the debtor, and against such judgment no limitation runs so long as the administration remains open, limitation as to its enforcement against the heirs after close of the administration will run only from the date when it was closed. (P. 473.)

**13. Practice in Supreme Court—Assignment of Error—Statement of Facts.**

An assignment of error in the Supreme Court must be accompanied by a statement of the facts, from the record, essential to enable the court to pass intelligently upon the contention, where they are not shown by the opinion of the Court of Civil Appeals. (P. 473.)

**14. Partition—Contribution—Cotenant—Ouster—Expenses for Common Benefit.**

One who ousts his cotenants, claiming exclusive title, is not precluded from the right to require them to contribute, on recovery of their interests, to expenditures made by him while in possession, for the benefit of the whole property, such as taxes, and court costs incurred in defending title. (Pp. 473, 474.)

**15. Same—Limitation.**

Limitation has no application to the claim to be reimbursed for an equitable proportion of expenses incurred for the joint benefit, by a defendant against whom partition is sought by cotenants whom he has kept out of possession. (P. 475.)

16. **Same—Administration.**

Where the defendant, claiming to be sole heir, had paid from his private means to protect the estate, the fact that he was administrator, and might have paid from the funds of the estate and been allowed credit in its settlement, did not preclude him from calling on his cotenants for contribution when they sought partition. (P. 475.)

17. **Same—Expenditures for Other Lands.**

The right of the defendant, on partition, to have contribution from his cotenants for expenses incurred by him as administrator in protecting the property was not limited to those paid on account of the particular land sought to be partitioned, but might include all expenses made for the general benefit. (Pp. 475, 476.)

18. **Same—Coheirs.**

In a suit by cotenants for partition, defendant may, where circumstances make it equitable, have contribution for expenditures made for the protection of the whole estate of which he was a coheir, though the suit is for partition of a particular tract; but contribution can only be proportionate to benefits. (Pp. 476, 477.)

19. **Same—Cotenants Chargeable with Receipts.**

The right of defendant in partition to contribution for expenditures must be the result of a full accounting of receipts and disbursements, and he should be charged with the proceeds of sales of the property by him which are recognized in the partition. (Pp. 477, 478.)

20. **Same—Compensation—How Made.**

The defendant entitled to contribution for expenditures should receive same in land out of the shares of his cotenants, if practicable. (P. 478.)

ON REHEARING.

21. **Judgment—Estoppel—Demurrer.**

The estoppel of a judgment concludes the parties upon the questions of law as well as those of fact, and final judgment upon the merits on demurrer is equally conclusive, on the questions decided, as other judgments. (P. 480.)

22. **Res Judicata—Estoppel.**

A judgment final on demurrer denying recovery in a suit for land, though adjudicating only the right to the land then in controversy, binds the unsuccessful party, by estoppel, in a subsequent suit for other lands against the same parties, where in both suits he claimed as heir of a decedent, and the judgment on the demurrer was (erroneously) upon the ground that he was not entitled to inherit. (Pp. 468, 479-481.)

23. **Same—Warrantor.**

Action on demurrer by a warrantor vouched in upon his warranty to defend a suit, binds the parties thereto by the estoppel of the judgment, as in other cases. (P. 481.)

24. **Pleading—Estoppel—Judgment.**

See plea setting up former judgment as an estoppel, held sufficient. (Pp. 481, 482.)

ERROR to the Court of Civil Appeals for the Third District, in an appeal from Falls County.

Nicholas Hanrick and others sued E. J. Gurley and others in trespass to try title. The judgment of the trial court upon the rights of the various parties was in part reformed, and then affirmed, by the Court of Civil Appeals. All parties except Gurley then obtained writs of error.

*L. W. Goodrich,* for E. G. Hanrick, on rehearing.—We hold that the estoppel of said judgment extends not only to said 100 acres occupied by said Eubanks, but also applies in favor of E. G. Hanrick in all cases

where Nicholas Hanrick or those in privity with him assert title by the same rights to other lands, as against E. G. Hanrick or those claiming in privity with him.

I find the rule on this subject so clearly stated in the following cases that I quote the same as full authority: Southern Pacific Ry. Co. v. United States, 168 U. S., 48.

"The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, can not be disputed in a subsequent suit between the same parties or their privies; and if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies be taken as conclusively established, so long as the judgment on the first suit remains unmodified. This general rule is demanded by the very purpose for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order, for the aid of judicial tribunals would not be invoked for the vindication of rights of persons and property, if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters properly put in issue and actually determined by them.

"Among the cases in this court that illustrate the general rule are Hopkins v. Lee, 6 Wheat., 109, 113; Smith v. Kernochen, 7 How., 198, 216; Thompson v. Roberts, 24 How., 233, 240; Steam Packet Co. v. Sickles, 24 How., 333, and cases cited; Cromwell v. Sac County, 94 U. S., 351."

See also Nichols v. Dibrell, 61 Texas, 541. Willie, Chief Justice: "It is well settled that the decision of a court of competent jurisdiction is conclusive, not only as to the subject matter, but as to every other matter which the parties might have litigated in the case and which they might have had decided. Danaher v. Prentiss, 22 Wis., 316; Bates v. Spooner, 45 Ind., 493; Le Guen v. Gouverneur, 3 Johns., 605; Shettlesworth v. Hughey, 9 Rich., 387. Or as differently expressed: 'The plea of res judicata applies not only to points upon which the court was actually required to pronounce judgment, but to every point which properly belonged to the subject of litigation, and which the parties, by exercising reasonable diligence, might have brought forward at the time. West v. Aurora, 6 Wall., 139.' This court has frequently indorsed this principle and adhered to it whenever it has been called in question. Lee v. Kingsbury, 13 Texas, 68; Tadlock v. Eccles, 20 Texas, 782; Chilson v. Reeves, 29 Texas, 276; Webb v. Mallard, 27 Texas, 80; Cayce v. Powell, 20 Texas, 767; Taylor v. Harris, 21 Texas, 439; Baxter v. Dear, 24 Texas, 17."

*Ewing & Ring,* for Nicholas Hanrick, on rehearing.—E. G. Hanrick was vouched in as warrantor by Eubanks, and put in the exceptions as-

serting noninheritable alienage, not in his own interest or right, but in the interest and right necessarily of Eubanks. In doing so, he was exercising the statutory right of defending, either in his own name or the name of his warrantee, on behalf of the warrantee. He, in his own right and interest, was not an adversary of the plaintiff; he, in his own right and interest, was not a party and could not properly have been. In appearing and defending, he did so merely in the exercise of his right as warrantor, in the interest and on the title of his warrantee and not his own, and in the representative capacity or quality of warrantor. Such were the issues upon which the judgment pleaded as res judicata was pronounced. Some discrepancy exists in the authorities on branches of the law of res judicata. It will not be necessary for us to attempt a reconciliation of apparently opposing holdings, in the view we take of the situation. It may be conceded, for the argument, that Nicholas Hanrick's right to recover any part of the Pedro Zarza tract would be defeated, if the judgment pronounced had been against him in a suit by Nicholas Hanrick for a hundred acres of the tract against E. G. Hanrick, sued in his own interest and right. It may be further conceded, for the argument, that the judgment was res judicata in favor of Eubanks as to any other tracts similarly held by him in the Pedro Zarza, and in favor of E. G. Hanrick as warrantor of the title of such tracts. But we maintain, with the confidence of conviction, that there was no res judicata, on the state of the issues, in favor of or against E. G. Hanrick as to the tract other than the hundred acres. This is believed demonstrable on elementary principles: In Philipowski v. Spencer, 63 Texas, 606, it is said: "A matter is not generally regarded as res adjudicata unless there be a concurrence of the four conditions following, namely: First, identity in the thing sued for; second, identity of the cause of action; third, identity of persons and of parties to the action; fourth, identity of the quality in the persons for or against whom the claim is made. 2 Bouv. Dic., 467; Benz v. Hines, 3 Kan., 390; Railway v. Commissioners, 12 Kan., 127; Bradley v. Johnson, 49 Ga., 412; Davis v. Brown, 94 U. S., 423; Howard v. Kimball, 65 Me., 308; 6 Wait's Act. and Def., 770."

The same declaration is made by all the texts, among which we cite: 21 Am. and Eng. Enc. of Law, 136, 227; 1 Freem. on Judg., 4 ed., sec. 252; Cromwell v. Sac County, 94 U. S., 351; Wells, Res Adjudicata, 8; Buckler's Digest, p. 527; Commissioner v. Smith, 5 Texas, 486; Owen v. Tankersley, 12 Texas, 412; Railway v. Flato, 13 Texas Civ. App., 215.

*Henry F. Ring,* for Nicholas Hanrick, Annie Hanrick, James Gameson, administrator, Elizabeth and Thomas Clare, Mary Whelan, Robert Whelan, Bridget Whelan, Eliza Whelan, Peter Whelan, and Catherine O'Neal.

*Presley K. Ewing,* for William E. Kendall and Estella J. Brady.

*Boynton & Boynton,* for W. H. Powers.

*Eugene Williams,* for Charles and Carrie L. Babbige, and W. A. Patrick, administrator.

WILLIAMS, ASSOCIATE JUSTICE.—Edward Hanrick, a citizen of Alabama, under whom all the parties to this action claim, died in the year 1865, intestate and without wife or children, leaving the following as his nearest kindred:   (1) E. G. Hanrick, the son of a deceased brother; (2) Elizabeth O'Brien, a sister;   (3) James Hanrick, and (4) John Hanrick, brothers.   All of these were aliens, subjects of the United Kingdom of Great Britain and Ireland, except E. G. Hanrick, who was a citizen of Alabama.   John Hanrick died in 1870, without issue and unmarried.   James Hanrick died in 1875, leaving the following children: Nicholas, Ellen, and Annie Hanrick, Catherine O'Neil and Elizabeth Clare, and the following grandchildren, issue of a deceased daughter: Robert, Mary, Bridget, and Elizabeth Whelan.   At his death, Edward Hanrick owned the following lands in Texas: Five leagues in Falls County, originally granted to Pedro Zarza; eleven leagues in Falls County, originally granted to Antonacio de la Serda; one league in Falls County, and ten leagues in Williamson County, originally granted to —— Aguirre.   He also had claims, the nature of which the record does not fully show, to other lands in Liberty, Milam, and Bell counties. This action was begun on the 17th day of December, 1878, by Elizabeth O'Brien and the persons above named as children and grandchildren of James Hanrick against E. G. Hanrick and Phillip O'Brien and his wife, Eliza M. O'Brien, in trespass to try title to recover an undivided two-thirds interest in the Serda and Zarza grants, the petition being in the ordinary form, except that it specially alleged plaintiffs' title by inheritance from Edward Hanrick and their alienage, as before stated, in connection with which an act of the British Parliament not necessary to be stated was set up; and admitted that E. G. Hanrick was entitled to an undivided one-third interest in the land sued for, and charged that Eliza M. O'Brien and Phillip O'Brien wrongfully claimed an interest in the land to which they were not entitled.

In 1879 there was a dismissal as to the defendants Phillip and Eliza M. O'Brien, and later, Elizabeth O'Brien, one of plaintiffs, having conveyed her interest before the suit was brought, discontinued her action. By various subsequent amended petitions and interventions, Phillip and Eliza M. O'Brien were brought back into the case as defendants, and E. J. Gurley, W. H. Powers, W. E. Kendall, Charles Babbige, and his wife, Carrie Babbige, William Brady, and others who need not be named, became defendants or interveners.   Brady, Eliza M. O'Brien, and Ellen Hanrick died pending suit and their respective legal representatives were made parties.   By the amended pleadings, the cause was made to assume

the character of a suit not only to recover the interest claimed by the plaintiffs, but for an adjudication of the rights of all parties and for a partition.

By the amended pleadings of plaintiffs, many parcels of the two grants in question were sought to be excluded from the controversy by the allegations that they were held by persons claiming them adversely to the estate of Edward Hanrick, deceased, and that E. G. Hanrick, claiming to be the sole heir and the administrator of the deceased, had compromised with such claimants by releasing to them the entire title of the estate to the parcels so held, and that plaintiffs acquiesced in and ratified such conveyances, with the prayer that such lands, specifically described, should be set aside to E. G. Hanrick, valued at zero, and that the remainder of the two grants, also specifically described in exhibit F to the petition, be partitioned. All other parties claiming adversely to E. G. Hanrick adopted such allegations and prayer, and the controversy now is over the land described in exhibit F.

The claims of the parties, as they were alleged in the pleadings and shown by the evidence, were as follows:

The plaintiffs claimed the one-third inherited by James Hanrick from Edward Hanrick. Three of such plaintiffs, Nicholas, Annie, and Ellen Hanrick, however, alleged that they had executed deeds dated respectively August 21, 1877, and April 3, 1878, purporting to convey to Eliza M. O'Brien, the wife of Phillip O'Brien, all their interest in the lands of the estate of Edward Hanrick, but that such deeds were made without consideration, and in trust for the purpose of enabling suit for the recovery of such lands to be brought in the name of a native American citizen, under the misapprehension that such suit could not be maintained in the grantors' names, they being aliens, and that the grantees in such deeds had conveyed interests in the lands to some of defendants, and prayed for a cancellation of all such deeds. The evidence at the trial established these allegations. None of the parties now before this court contest this claim except Powers and the Babbiges, and except that E. G. Hanrick urges certain defenses of limitation and res judicata predicated upon the conveyances of the legal title of these parties to Eliza M. O'Brien.

The interest which had been inherited by Elizabeth O'Brien was conveyed by her to Eliza M. O'Brien on May 11, 1878, and one-half of such interest was conveyed by Eliza M. and Phillip O'Brien to William Brady on November 27, 1878. After the institution of this suit, Phillip and Eliza M. O'Brien made the following deeds to William Brady: May 24, 1879, 1000 acres; January 10, 1880, 2000 acres; December 14, 1880, 1000 acres; October 11, 1881, 1000 acres. All of these deeds were properly recorded and the four last stipulated that the quantities of land conveyed might be selected by Brady out of any lands which should be set apart to Phillip or Eliza M. O'Brien in partition of the estate of Edward Hanrick.

The claim of Brady's estate is therefore for one-half of the interest originally inherited by Elizabeth O'Brien, and 5000 acres to be taken

out of the other half of such interest; and, by his pleadings filed before his death, he elected to take the 5000 acres out of such lands as might be set aside to Eliza M. O'Brien in the Serda grant, so far as it should suffice, and the remainder out of the Zarza. As to this claim, controversies exist between him, Powers, and Babbige. Phillip and Eliza M. O'Brien, on the 15th of November, 1882, executed a deed to W. H. Powers, conveying all their interest in the Serda grant, and Powers, by virtue of this conveyance, claims not only such interest as Phillip and Eliza M. O'Brien held under their deed from Elizabeth O'Brien, but also the interest which the deeds from Nicholas, Ellen, and Annie Hanrick purported to convey to her, asserting that he purchased for value without notice of the trust upon which the plaintiffs alleged the latter deeds were executed.

On March 8, 1884, Phillip and Eliza M. O'Brien executed to Chas. Babbige a mortgage on her interest in the Zarza grant, reciting such interest to be one-sixth thereof, and, under this mortgage and a sale made in pursuance of an attempted foreclosure thereof, Mrs. Carrie I. Babbige asserts title to one-sixth interest, both by virtue of the conveyance from Elizabeth O'Brien to Eliza M. O'Brien and also by virtue of the conveyances to the latter from Nicholas, Annie, and Ellen Hanrick, her claim under the latter deeds being that the mortgage was taken without notice of the trust alleged.

On the 9th day of August, 1884, Phillip and Eliza M. O'Brien, by deed reciting and confirming the previous conveyances to Brady, conveyed to W. E. Kendall all their remaining interest in the lands of the estate of Edward Hanrick which had been inherited by Elizabeth O'Brien from Edward Hanrick or from John Hanrick.

There were conveyances made by Phillip and Eliza M. O'Brien to other parties who are not now asserting rights under them, and we deem them unimportant in the decision of the questions now before the court.

E. G. Hanrick claimed all of the lands in controversy as the sole lawful heir of Edward Hanrick, asserting that the others were incapable of inheriting because of their alienage. He also claimed that the interests of Nicholas, Ellen, and Annie Hanrick had been lost by limitation and had also been adjudicated against them in previous suits, the judgments in which were set up by him. E. G. Hanrick also set up and claimed the right to have allowed and charged upon the common estate sums of money which he, while acting as administrator of Edward Hanrick and asserting sole ownership in himself of such estate, had paid out for taxes, court costs, attorneys' fees, and other expenses incurred in prosecuting and defending actions for the establishment of the title against adverse claimants. All of such claims were disallowed by the judgment of the court below, except those for taxes and court costs, which were allowed as a charge to be satisfied by sale of property unless paid by the parties.

E. J. Gurley claimed one-third of all the lands under a contract made

with Edward Hanrick, which was thereafter ratified and continued in force by E. G. Hanrick, as administrator and sole heir, under which Gurley was to receive one-third of all lands recovered from parties who claimed and held nearly all of the land adversely to Edward Hanrick and his estate, as compensation for legal services rendered in prosecuting and defending suits and otherwise establishing and protecting the title under which all parties claim, which contract was further consummated by E. G. Hanrick, while administrator, executing to Gurley a deed for such interest.

The District Court, by its judgment, established: (1) Gurley's claim to one-third, thereby diminishing to that extent the property to be divided among other parties, and in the remainder, established: (2) The right of plaintiffs to one-third, and therein established the title of Nicholas, Ellen, and Annie Hanrick against all claims asserted against them under their conveyances to Eliza M. O'Brien. (3) The right of Brady's estate to half of the share which would have otherwise been allotted to Eliza M. O'Brien, as assignee of Elizabeth O'Brien. (4) The right of said estate to 4000 acres to be taken out of the other half of such share (one of the deeds for one thousand acres being held to have been a mortgage afterwards discharged); but requiring that this claim of Brady's estate be satisfied from lands allotted to this share, first out of the Zarza and then out of the Serda grant. (5) The right of W. H. Powers to the remainder of the Elizabeth O'Brien interest in the Serda grant. (6) The right of W. E. Kendall to the remainder of this share in the Zarza grant. (7) The right of Carrie Babbige to a lien and foreclosing same on the one-ninth interest in the Zarza grant remaining in Elizabeth O'Brien after execution of deed to Brady of November 27, 1878, to secure the sum of $2000, and interest. (8) The right of E. G. Hanrick to one-third. (9) The right of Hanrick to charge upon the lands the amount found in his favor for court costs and taxes expended by him, to be paid by the parties ratably or satisfied by sale.

The decree set aside to Hanrick, as prayed by plaintiffs and all parties claiming adversely to him, the lands which he had conveyed by way of compromise to adverse claimants, valuing them at zero and not charging Hanrick with them in partition. Other provisions were made for the inclusion in the shares allotted to the different parties, of parcels which each had undertaken to alienate in severality, if found practicable, and this in accordance with prayers in the pleadings of the claimants, except Hanrick and Gurley.

On appeal, the Court of Civil Appeals affirmed this decree, except in two particulars, in which it was reformed, viz., (1) the first deed for 1000 acres from Phillip and Eliza M. O'Brien to Brady, which the District Court held to have been a mortgage subsequently satisfied, was held to have been an absolute conveyance, and Brady was adjudged to be entitled to 5000 acres instead of 4000 acres; (2) the lien in favor of Babbige was held to attach to only such interest in the Zarza grant as remained in Eliza M. O'Brien after her several conveyances to Brady

were satisfied, and to therefore affect only such interest as passed to Kendall by conveyance subsequent to the mortgage; and the judgment was corrected correspondingly.

All of the parties whose claims have been stated, except Gurley, have applied for writs of error, and their several contentions are now before us for consideration. This outline of the case, with the additional facts stated as affecting particular questions raised, will suffice for an understanding of the decision.

As E. G. Hanrick contests the title of all other parties and asserts title in himself superior to all others, except Gurley's, we will first dispose of his contentions.

His first is that, as all the alleged heirs of Edward Hanrick except himself were aliens when descent was cast, they were incapable of inheriting; and that therefore descent was cast upon him as sole heir. This contention has been three times denied by this court and once by the Supreme Court of the United States in cases involving the same title. Hanrick v. Hánrick, 54 Texas, 101; same case, 61 Texas, 596; Hanrick v. Hanrick, 63 Texas, 623; Hanrick v. Patrick, 119 U. S., 156.

The fact upon which those decisions were based were identical with those appearing from the record now before us. The thorough consideration which the question has thus received would have justified the court in again deciding it upon the mere authority of the opinions referred to; but we have re-examined it and have found no reason to dissent from the conclusion reached by our predecessors.

The next defense urged by E. G. Hanrick is that of limitation against Nicholas, Annie, and Ellen Hanrick. This action was brought against him in less than ten years after limitation could have commenced to run in favor of any possession held by him; but it is contended that, at the time of its institution, the legal title to the interests inherited by the plaintiffs just named was vested in Eliza M. O'Brien by virtue of their deeds to her, and that, as they did not, in their original petition, set up the facts on which they relied to avoid those deeds, limitation was not interrupted until the filing of the amendment in which such facts were first alleged, which was on the 19th day of July, 1882. The answer is that those plaintiffs, notwithstanding the conveyances, still held such an equitable title to the land as entitled them to recover in their original action of trespass to try title. Had they stood upon their first petition and proved their heirship, and defendant had introduced the deeds to Eliza M. O'Brien to show an outstanding title, they could have avoided such title by proving that the deeds were executed upon an express trust which left in them the equitable title, and thus could have maintained their action. Their right was such as entitled them to possession as against not only Eliza M. O'Brien, but adverse occupants. Neill v. Keese, 5 Texas, 30.

Besides, this question is raised upon facts found by the trial judge, which are not attacked, and those findings do not show such an adverse possession of the whole of the land as would bar plaintiffs' action. The

actual possession is found to have been by tenants of separate parcels which are not described either in the findings or the pleadings, and, even as to such parcels, the duration of the possession is not stated.

E. G. Hanrick also asserts that the title of Nicholas, Annie, and Ellen Hanrick is barred by a judgment of the United States Circuit Court, which he pleaded. That judgment was rendered in a cause brought by Phillip and Eliza M. O'Brien and William Brady against E. G. Hanrick in trespass to try title, in which the plaintiffs alleged that they were the owners of an undivided one-third of the lands now in controversy through a conveyance of same by Elizabeth O'Brien to Eliza M. O'Brien, and a conveyance of one-half of same by Eliza M. O'Brien to William Brady. The judgment was in accordance with this allegation in favor of the plaintiffs for an undivided one-third of the land. Hanrick's contention is that, as Eliza M. O'Brien was then invested with the legal title of Nicholas, Ellen, and Annie Hanrick, and could have set it up and had a determination of it in that case, the judgment has the effect of an adjudication against such title. We do not think this is true. Being invested with the legal title to this interest, Eliza M. O'Brien and her husband could have asserted it in behalf of the beneficiaries, and, had she done so and actually put the title in issue, an adjudication of it against her might be held to bind those for whom she held it, but nothing short of this would, for the reason that she held the title which she actually asserted and upon which she recovered in a different capacity from that in which she held the legal title to the interest in question. She was not bound to set up the title held by her in trust, as she would probably have been bound to set up a title held in her own right.

Another judgment relied on as res judicata of Nicholas Hanrick's title to the Zarza grant is one rendered by the District Court of Falls County, in an action of trespass to try title, brought by him against one Eubanks, for 100 acres of that grant, upon which Eubanks was alleged to have entered, in which action the plaintiff set forth his title to the whole of the grant as it herein appears, but prayed simply for judgment admitting him to possession of the 100 acres in common with others entitled. Eubanks vouched in E. G. Hanrick as his warrantor and a general demurrer urged by them to the petition was sustained and no appeal was taken. The courts below held, we think correctly, that this was an adjudication against Nicholas Hanrick of the title to the 100 acres only. That was all that was in issue, and the judgment could not operate upon the title to other lands not put in issue in that case.

Another contention of E. G. Hanrick is based upon that part of the petition of the plaintiffs which alleged his compromises with and conveyances to third persons not parties to the suit and prayed that the lands thus conveyed should be excluded from the partition to be had. His point is that the court had no jurisdiction over the persons and lands not brought into the case and could not make any order with reference to them. It is true that the court thus acquired no power to bind

such persons or lands by any judgment which it might render, but it did acquire the power to make a proper partition between the tenants in common of the remainder, and, if the plaintiffs saw fit to relinquish all claim to lands which Hanrick had undertaken to convey as his own, he had no right to complain; and a proceeding recognizing the validity of those conveyances could not possibly operate to the prejudice of his grantees. There was no need to bring those parties into the case in order to have partition of the remainder of the land between him and his cotenants.

This disposes of all of the questions concerning the plaintiffs' right to recover, except those raised by Powers and Babbige as to the title of Nicholas, Annie, and Ellen Hanrick.

As we have seen, the title upon which those plaintiffs rely was sufficient to enable them to recover, and it remains to be determined whether or not they have lost it to Powers and Babbige as innocent purchasers. The judgment of the District Court necessarily involves a finding that Powers was not an innocent purchaser, and the Court of Civil Appeals expressly held that he was not. If there was any evidence upon which this finding may be sustained, it is beyond the power of this court to disturb it. The evidence shows that at the time Powers bought, under a deed which purported to convey a half interest in the Serda grant, the value of the lands in that grant amounted to as much as $1,000,000, and the lands in that grant embraced in exhibit F, which are conceded to have belonged to Edward Hanrick's estate, were worth at least $90,000. Powers paid $1000. It is true that the title which he purchased, leaving out of sight any claim of Nicholas, Annie, and Ellen Hanrick, and treating their interest as having been vested in Eliza M. O'Brien, was much involved by various conflicting claims, and this was a fact for the trial court to consider in determining the question whether or not the consideration paid by Powers was so grossly inadequate as to warrant the conclusion that he was not a purchaser for value, without notice of the trust. But it was evidence for that court to weigh, in connection with all other facts, and we can not say, as a matter of law, that there was no evidence tending to sustain the conclusion which it reached. We assume, as did the court below, that Powers was not affected with notice as a purchaser pendente lite, inasmuch as when he bought from Eliza M. O'Brien she had not been duly served with process making her a party to the suit, though the amended petition had been filed against her, containing the allegations as to the character of the conveyances to her.

As to the claim of Mrs. Babbige, we think both courts below properly held that Babbige took his mortgage pendente lite, and was therefore affected with notice of the character of the conveyances under which the mortgagor held the legal title to the interests under consideration. The amended petition, again making Eliza M. O'Brien and Phillip O'Brien defendants and alleging the facts on which the plaintiffs relied to defeat their conveyances, was filed in July, 1882. No legal service was had

upon those defendants, but, upon the —— day of March, 1883, John T. Brady, as their attorney of record, entered an appearance for them in the case and disclaimed any interest under the deeds in question. The mortgagor then became a party to the suit, and Babbige, in afterwards taking his mortgage, was charged with notice of plaintiffs' claim, unless it is true, as contended by Babbige, that Brady was unauthorized to enter the appearance. The contention is that he had no authority to make the disclaimer; but the real question is whether or not he had authority to make Phillip and Eliza M. O'Brien parties to the suit, for the allegations in the plaintiffs' petition were sufficient to put purchasers or mortgagees from them upon notice of the character of the deeds under which they held the legal title, without the aid of the disclaimer. John T. Brady was employed as attorney to represent these parties by William Brady, by virtue of a contract entered into between him and Phillip and Eliza M. O'Brien at the date of the first conveyance by those parties to him, by which he was empowered and obligated "to take all proper and legal suits and proceedings to recover possession and obtain undisputed title" to the premises covered by the deeds above mentioned, under which Eliza M. O'Brien claimed, such premises being the lands herein question. This undoubtedly empowered him to employ attorneys to prosecute such suits, and, through them, to make Phillip and Eliza M. O'Brien parties thereto.

We conclude, therefore, that the court below properly held Nicholas, Ellen, and Annie Hanrick entitled to recover, along with their coplaintiffs, against all parties to the suit, the interest claimed by them, except as it was diminished by the claim of Gurley; and that the claims of all the other parties to the suit, except Gurley and E. G. Hanrick, are restricted to the interest inherited by Elizabeth O'Brien and by her conveyed to Eliza M. O'Brien.

It is not disputed that one-half of such interest belongs to the estate of William Brady, by virtue of the conveyance thereof to him by Eliza M. O'Brien. The controversies between Brady's estate and other claimants of the Elizabeth O'Brien interest are as to the effect of the deeds for five thousand acres, and the rights thereby conferred upon Brady. Under the decision in the case of Dull v. Blum, 68 Texas, 299, it must be held that those deeds vested in Brady no present title to any part of the lands which were the subject matter of them. Though they were in form conveyances, in substance they were nothing more than contracts binding O'Brien and wife to convey to Brady the number of acres specified, as they might be selected by him out of any part of the lands of the estate which should be set apart in partition to Eliza M. O'Brien. The case here made is a stronger one for the application of this proposition than was the one referred to, for the reason that, while in the former case the acreage undertaken to be conveyed was out of a specified tract containing a given quantity which the grantor owned, here it was out of an unascertained interest in all the lands of an estate, the extent of which was uncertain. In the nature of things, there could have

passed no title to any particular land nor to an ·undivided interest in any land for want of data by which to ascertain the extent of such interest; but we think it nevertheless true that the contracts were valid ones and conferred upon Brady a right to select the lands and require the conveyance of them out of the interest of the grantor when it should be ascertained. No objection has been urged to his attempt to assert his right and have it adjudicated in this suit; but, on the contrary, those claiming adversely to him have attacked his claim and sought to have it determined and declared inferior to theirs. His contracts were entitled to registration and were recorded before the accrual of any of the adverse claims under Eliza M. O'Brien, and those claims were taken with notice of his rights. It was not in the power of Eliza M. O'Brien, by subsequent conveyances or mortgages, to restrict the rights which she had created in Brady by those contracts. We think the court below should therefore have enforced his right, not only to the quantity of land specified in the deeds, but the right of selection given by them, and should have allowed Brady's estate to take his acreage first out of such parts of the Serda grant as should be allotted to the share of Elizabeth O'Brien and her assignees; and then out of such interest in the Zarza grant as should be allotted to that share. The view which we have expressed as to the right conferred by the instruments under which Brady claims the 5000 acres renders inapplicable the contentions of Powers and Babbige that those instruments are void for want of a description of the lands, or, if not void, that they conveyed only a fractional undivided interest in all the lands of the estate, the quantity of which is to be ascertained by the proportion between the quantity attempted to be conveyed and the whole of Eliza M. O'Brien's interest in such lands. The instruments, as we have seen, are not to be treated as deeds vesting in the grantee a present interest, but as contracts to convey a specified number of acres out of the share of the grantor when such interest has been ascertained and set apart. Of Babbige's several contentions, that the deeds to Brady should have been found to have been only mortgages, that they were fraudulent as between attorney and client, and that they should have been postponed to Babbige's mortgage for the reason that Eliza M. O'Brien had paid to one of the attorneys the money to be applied to the discharge of the mortgage, it is enough to say that all of them present questions of fact which this court can not consider, inasmuch as the judgments of the courts below against them were amply sustained by the evidence.

From what we have said, it follows that Powers, through his deed from Phillip and Eliza M. O'Brien, acquired only such portion of the Elizabeth O'Brien interest as remained to his grantors, after satisfying all of the claims of Brady, and that the mortgage to Babbige attached only to a like portion of the Zarza grant, and could therefore affect only such interest in that grant as passed to W. E. Kendall by deed subsequent to the mortgage.

It remains to be determined whether or not Mrs. Babbige had acquired

title to such remaining interest of the Zarza grant through the foreclosure proceedings on which she relies, and, if not, whether or not she was entitled, as the court below held, to a foreclosure of the mortgage on such interest. Pending the suit, Elizabeth O'Brien died, and W. A. Patrick became the administrator of her estate. The claim of Babbige, secured by the mortgage, was presented to and allowed by the administrator and approved by the court in April, 1886, and the mortgage was foreclosed by an order of sale made in December, 1886, in pursuance of which a sale was made by the administrator and conveyances were executed under such sale to Mrs. Babbige. Neither Brady nor Kendall were parties to this proceeding, although deeds to them from Phillip and Eliza M. O'Brien, passing all their title to the land, were of record in the proper county. It is settled by the decisions of this court that, as all the title of the deceased had been passed away prior to her death, nothing remained in her estate subject to the orders of the probate court, and that the equity of redemption of the purchasers could not be foreclosed in this manner, and that the purchaser, under such an attempted foreclosure, acquired no title whatever. Schmeltz v. Garey, 49 Texas, 49; Jackson v. Butler, 47 Texas, 423. It is true, as shown by the deed from Phillip and Eliza M. O'Brien to Kendall, that only a part of the purchase money for the interest conveyed to Kendall was paid in cash, and that, for the balance, notes of third parties, secured by vendor's liens on other lands, were given, and a vendor's lien on the land conveyed to Kendall was retained to secure the payment of the unpaid purchase money. It is contended by counsel for Babbige that this made the contract executory and left the legal title in Mrs. O'Brien, and that, hence, her estate held an interest in the land which gave the probate court jurisdiction to order a foreclosure sufficient to pass to the purchaser such legal title. If, indeed, the title had not passed to Kendall, it may be true that a purchaser under these foreclosure proceedings would have acquired such right as the estate possessed and could enforce it against Kendall by a disaffirmance of the contract, for nonpayment of purchase money, as Mrs. O'Brien in her lifetime may have done; but nothing is made to appear as to the disposition made of the notes on third parties taken by Mrs. O'Brien, and whether they had been paid or not. For this reason, this contention must fail, and the case must be treated as belonging to the class involved in the two decisions referred to, and it follows that through the foreclosure proceedings, Mrs. Babbige acquired no title. The question remains, whether or not she still has a lien upon Kendall's interest in the land which can be enforced by foreclosure. That she has is beyond controversy, unless her claim, before she asserted it in the present suit, had become barred by limitation, as contended by Kendall and Brady. Her intervention, in which she set up her rights, was filed in 1897, more then ten years after the claim was established against the estate of Mrs. O'Brien, and the contention is that the claim had become barred by the statute of limitations of ten years, applicable to judgments generally. By the establishment of the

claim against the estate, the note for the debt was merged in the judgment and the ten years statute is the only one which could operate. Montgomery v. Culton, 18 Texas, 751. It does not follow, however, that limitation against such judgment ran from its date. By the decisions of this court, the proposition is established that the limitation, which a purchaser of land charged with a mortgage to secure an indebtedness of his grantor may plead, is that which the grantor himself could plead against the debt. The mortgage is treated as incident to the debt, and, so long as that subsists, the mortgage subsists, and the question in such cases always is whether or not the debt has become barred in favor of the debtor, or, if he be dead, in favor of his estate. Slaughter v. Owens, 60 Texas, 668; Beck v. Tarrant, 61 Texas, 402. After a claim has been established against an estate, no limitation runs against it so long as the administration remains open. No suit to recover judgment on it against the estate can be maintained pending the administration and limitation against a suit to enforce it against the heirs, after close of the administration, would therefore run only from the date when it was closed; and it necessarily follows that the same rule applies between the creditor and a purchaser of the property on which the debt is charged. In this case, it is not made to appear when the administration upon the estate of Eliza M. O'Brien was closed, and hence it can not be said that the action for the foreclosure of the mortgage against Kendall was barred by limitation. We think, therefore, that though she has no title to the land claimed by her, Mrs. Babbige still has a lien upon it to secure the debt, the right to which lien she acquired by her purchase at administrator's sale, and that the judgment of the Court of Civil Appeals, which enforced this lien against the interest in the Zarza grant which passed to Kendall, was correct and that it enforced the only right which Mrs. Babbige has.

Powers is the only party who has complained of the judgment in favor of Gurley for one-third of the land, and he has only complained by an assignment in his application for writ of error, unaccompanied by a statement of the facts from the record essential to enable this court to pass intelligently upon his contention. The facts upon which Gurley's claim depends are not stated in the opinion of the Court of Civil Appeals, and the question is not therefore presented in accordance with the rules so as to require this court to consider it. Gurley's claim is apparently an equitable and meritorious one (Walker v. Lawler, 45 Texas, 532), and, if there are defects in it which should defeat it, they have not been brought to the attention of this court in the proper manner.

All of the parties except Gurley complain of the allowance to E. G. Hanrick of his claim for contribution from his cotenants for moneys expended in payment of court costs and taxes. Some of the objections are so fundamental as to deny any right to contribution at all, and these will be the first considered. The most sweeping of them is that, inasmuch as he had ousted his cotenants from possession, and, by his con-

duct, prevented a participation by them in the use and enjoyment of the common estate, he will not be heard to assert a claim for contribution by them in expenditures made by him while so acting, although they operated as a benefit to such estate. The facts are sufficient to show such an ouster, and one of the consequences of it to Hanrick would be a liability on his part to his cotenants for their share of the value of the use and occupation of the lands so held by him. Osborn v. Osborn, 62 Texas, 495. The assignments of error, however, do not complain that the court below made no such charge against him, nor are we pointed to any evidence upon which the court should have found the value of the use and occupation of the land. The objection urged is simply, that, by his ouster of his cotenants, he has precluded himself from claiming contribution from them. We think this contention can not be maintained. The court, in determining the rights of the parties, will adjust them upon the proper basis. It will deny to the ousting cotenant his claim to the exclusive ownership of the property, but will enforce his true rights with respect to it; and, if he has discharged burdens which rested alike on the whole estate, it will require his cotenants, when they seek partition and settlement with him, to bear their just proportion of such burdens, requiring him, at the same time, to account for any benefits, in excess of his just share, which he has received from the estate. Many of the reported cases in which this principle of contribution has been applied grew out of the efforts of an heir to acquire a title himself adverse to that of his coheirs, and, by force of it, to exclude them. Such efforts have uniformly met with defeat, but at the same time, the cotenants seeking to share in the estate have as uniformly been required to reimburse him so far as he had borne for their benefit more than his portion of the burdens. Duke v. Reed, 64 Texas, 705; Rothwell v. Dewees, 2 Black, 614; Austin v. Barrett, 44 Iowa, 490; Gosselin v. Smith, 154 Ill., 74; Van Horne v. Fonda, 5 Johns. Ch., 388; Hannan v. Osborn, 4 Paige, 343. This is simply an application of the maxim that equality is equity. The parties owning an estate in common and being entitled to equal benefits, are required to bear equally the burdens incident to their common ownership. Since, as we have before said, the parties complaining here have not, with the exception mentioned below, complained that E. G. Hanrick has not been required to account for any benefit received from the estate beyond his share, the question as to the allowance of these sums paid out by him is simply whether or not they fall within the principle stated and inure to the benefit of his cotenants. Taxes constituting an incumbrance upon the joint estate, the tenants are bound to contribute ratably to their payment, and, if one pays them all, the others must account to him. Keites v. Church, 142 Mass., 586; Moore v. Woodall, 40 Ark., 42; Eads v. Retherford, 114 Ind., 273; Weare v. Van Meter, 42 Iowa, 128. Court costs incurred in the defense and protection of the common title, if the proceedings were necessary and operated to the benefit of the estate in which the parties are jointly interested, also constitute a charge of the kind in question.

Gage v. Mulholland, 10 Grant Ch., 145; Gosselin v. Smith, 154 Ill., 74; Freeman on Cotenancy, etc., 263, 278.

It is urged that the claims were barred by limitation, and had become stale by lapse of time and laches. If the pleadings were treated as asserting a cause of action in behalf of Hanrick for a personal judgment for money against his cotenants which accrued at the date of each payment this proposition would doubtless be correct. For such outlays, some authorities hold that the tenant paying them may hold the cotenant personally liable by direct action, and to such actions, the same as other suits to recover money, the statute of limitations doubtless applies, the difficulty arising in determining when the cause of action accrues. But such is not the character of this claim. Hanrick's cotenants are suing him in a court of equity for partition, and the court must determine what each is entitled to receive of the estate to be divided. If charges upon it have been paid by one, of which the others are to receive the benefit, any balance in his favor over and above his just proportion, becomes an equitable charge upon the interests of the others to be worked out in the partition. His right is to have the property so divided or sold as to make the others, while sharing equally in the benefits of the estate, share equally in the necessary expenses incident to it. To such a claim, when thus asserted, the statute of limitations has, in our opinion, no application, because it is an incident to partition, and to an action for partition the statute does not apply. The parties so receive their title and hold the property as to make them "mutually accountable to each other without regard to lapse of time." Prince v. Heylin, 1 Atk., 493.

Another objection to the claim is that Hanrick, while making the expenditures, was acting as administrator of the estate of Edward Hanrick, and should have accounted to the probate court and established his claim there, and can not now assert it in this suit. The fact that he was administrator did not take away his rights as an heir. As heir, he had the right to protect the estate by use of his own funds, and if he thus discharged burdens and incurred necessary expenses of which his coheirs are to get the benefit, his rights are the same as if he had not been administrator. He certainly could not claim reimbursement for payments made with funds of the estate, since in such case the other heirs, by their interests in such funds, would already have borne their part of the expenses. But so far as he paid out of his own funds more than his proportion of such charges, he would be entitled to have his claim enforced in this suit. Moore v. Moore, 89 Texas, 33; Eckford v. Knox, 67 Texas, 200. Under these decisions, if the estate became indebted to him for a balance of expenses over and above funds received by him, he has the right to have such balance satisfied in partition. Duke v. Reed, supra.

A difficulty, however, grows out of the fact that some of the expenditures allowed by the judgment, both for taxes and costs, were made for the benefit of property not involved in this suit,—some of them upon lands in the Aguirre grant, some upon the lands in Liberty County, and

some upon the lands of the estate generally.    Most of the items charged are so stated, both in the pleading and evidence, that the court can not say what sums were expended with reference exclusively to lands in the Serda and Zarza grants.    The proposition is urged that only expenditures made for the benefit of the lands in controversy can be here considered.    We are not prepared to agree to this contention as broadly as it is put.    Hanrick was, for a part of the period during which expenditures were made, the administrator of Edward Hanrick, and, while acting as such, it was his duty to pay taxes on all lands claimed by the estate and inventoried as belonging to it.    It was also his duty, as administrator, to prosecute or defend the title of the estate to such lands, and all expenses so incurred by him for taxes and court costs were properly chargeable against the whole estate; and, if he has not been reimbursed for such expenditures, he has the right to have them taken into account in this proceeding.    Eckford v. Knox, 67 Texas, 200.    This, however, does not meet the difficulty, because it does not appear that all of the expenses allowed were paid by him while acting as administrator, nor can it be seen what portion of them, if any, was thus paid; and this makes it necessary to consider what were his rights, treating him as coheir simply.

All lands inherited by these parties from Edward Hanrick were held in common and constituted the common estate.    The expenses incurred by one cotenant in the protection of that estate may constitute a charge upon the whole of it and his claim is not necessarily to be separated and distributed so that money expended upon one tract is to be charged upon that alone.    Whether or not this should be done may depend upon circumstances not fully developed by the findings of the trial judge.    To authorize the charging upon the lands in controversy of expenditures made for the protection of other lands, the principle which we have stated would obviously require that it be made to appear that the lands with respect to which the expenditures were made, did, in fact, constitute a part of the common estate and that the other cotenants, by sharing in such other lands, get the benefit of the expenditures.    If this be shown, we see no good reason why, as between the heirs, Hanrick should not be allowed full satisfaction out of the part of the estate now undergoing partition.    To postpone him might result in injustice, since it might be that other parts of the estate have been appropriated and put beyond his reach by the others.    There may never be any partition of the other lands.,   But nothing of the sort is shown with reference to the lands in Liberty, Milam, and Bell counties.    It does not appear that any title to them was inherited or that any of the heirs have ever received or will ever receive any interest in or benefit from them.    This makes it plain that they may have had charged upon land which they own, expenditures upon that which they do not own.    With reference to the lands in the Aguirre grant, the case is somewhat different.    It appears and is found by the trial court, that, while the estate held the title to them, it was in dispute, most, if not all, of the land being occupied by a great number

of adverse claimants and severe litigation being thereby necessitated for the enforcement of the title of the estate. It also appears that the plaintiffs, in conjunction with William Brady, have compromised with many of such adverse claimants, releasing to them 23,000 acres at $1 per acre, and have, in this way, received as much as $23,000 out of those lands, and that this was done pending this suit and after E. G. Hanrick had made the expenditures charged. Were the question between E. G. Hanrick, on the one part, and the plaintiff and Brady on the other, these facts might justify the holding of the court that the latter, by thus asserting claim to the lands in the Aguirre grant and receiving benefit to this extent out of them, should be required, in partition of the land in controversy, to account for the portion of the expenditures made by their cotenant in protecting that title. As to this, we need not definitely decide, for this proposition will not sustain the judgment. Others besides Brady are interested in the share in the land now being partitioned which descended to Elizabeth O'Brien, and no such facts are shown affecting them. The case is, therefore, left in such an attitude that the court can not say whether they have ever received or will ever receive or assert any interest in the Aguirre lands. Being only bound to contribute to payments made for their benefit, if they have received none, there is no liability and their lands should not be charged. On the other hand, if they are properly accountable out of their interests in the land in controversy, it would be unjust not only to E. G. Hanrick but to plaintiffs and Brady to charge the whole amount on their interests. Such are the difficulties in the way of imposing on these lands expenditures made upon others. While we can not hold that it can not be done, yet the facts to justify it have not been developed.

Powers, Babbige, and Kendall simply acquired interest in the estate from the coheirs of E. G. Hanrick, after the accrual of such right to contribution as he had, and we do not see that they are in a position to complain of any adjustment of such rights which would have been just as between him and their grantors. Arnold v. Cauble, 49 Texas, 532.

Another objection urged against the judgment in Hanrick's favor for contribution is that it fails to make him account for the money received by him from adverse occupants of the lands in compromises made with them; and, in the same connection, error is assigned upon the exclusion of evidence offered by the plaintiffs to prove the amount of money thus received. The evidence tends to show that E. G. Hanrick, while administrator and asserting sole heirship of Edward Hanrick, made these compromises and executed deeds purporting to release to the adverse claimants the entire title of the estate and used the money in paying expenses incurred. Those conveyances are confirmed by the judgment in this proceeding and Hanrick is not charged with the lands, nor was he required by the judgment to account for the moneys received. We think this was error. To establish a right to contribution, it was necessary for him to show that he had paid sums in excess of funds in his

hands belonging to the estate. He can not be heard to say that funds received by him for releases of the title of the estate which he thus represented did not belong to the estate, and no right could arise to call upon his coheirs for contribution for expenditures made out of such funds. Such right could only be established as the result of a full accounting, showing both receipts and disbursements, and a balance of the latter in his favor; and any evidence tending to show the use of funds belonging to the estate in making the expenditures was therefore admissible. Since he is to be permitted, as above held, to show the use of his own funds in the discharge of common burdens, his adversaries must be permitted to rebut his evidence and show that the funds he used belonged to the estate.

In case it should be found that E. G. Hanrick is entitled to an allowance for such expenses as those before referred to, it will become necessary to determine how his claim is to be satisfied. The opinion in the case of Duke v. Reed, 64 Texas, 716, is authority for the proposition that he should be compensated in land out of the shares which would otherwise be set aside to the others, or that such other order should be made "as will secure to such party the money due him before the party from whom it is due can obtain his share of the land." Since the law favors an actual division rather than a sale, the course first indicated should be resorted to and a sale should not be ordered until it appears in the course of partition that satisfaction of the claim can not be secured by aparting to Hanrick a larger share of the land. Kalteyer v. Wipff, 92 Texas, 683.

The only errors which we have found in the judgment of the Court of Civil Appeals are in the disallowance of the right of the estate of Brady to select the lands to which he became entitled under his contracts for 5000 acres, and in the affirmance of the part of the judgment allowing E. G. Hanrick's claim for contribution. It will not, therefore, be necessary to send the whole case back for a new trial. The judgment will be reformed so as to enforce the right of selection in favor of Brady's estate, and, as thus reformed, it will be affirmed as to all the issues except that presented by Hanrick's claim for contribution; and the judgment upon that issue will be reversed and the cause remanded for the sole purpose of taking a further account upon it in accordance with the opinion. Duke v. Reed, supra.

*Reformed and affirmed in part and reversed and remanded in part.*

Opinion delivered December 18, 1899.

### ON MOTION FOR REHEARING.

WILLIAMS, ASSOCIATE JUSTICE.—One of the points raised in the motion for rehearing which was not much discussed by counsel in their original briefs and arguments presents considerable difficulty, and we have concluded to refer it back for further argument and citation of

authorities. Counsel for Nicholas Hanrick and E. G. Hanrick are re-
quested to file within thirty days written arguments and citations of au-
thorities upon the following questions: (1) Whether or not the judgment
of the District Court of Falls County in favor of E. G. Hanrick and his
tenant, Eubanks, in the suit brought by Nicholas Hanrick for 100 acres
of the Zarza grant, which judgment was rendered in favor of defendants
against plaintiff on demurrer to the petition, upon the ground that said
plaintiff could not take title by inheritance from Edward Hanrick, as
claimed in his petition, operates as an estoppel upon Nicholas Hanrick
against the assertion in this action of title to other lands claimed herein
by the same right of inheritance therein set up and adjudicated. (2)
Especially, does the decision of the court in the former suit upon the
question of law arising upon the facts alleged in the petition, and ad-
mitted by the demurrer, as to such right of inheritance, preclude further
examination of such question of law in a different suit between the same
parties, where the plaintiff claims other lands under the same right?

The attention of counsel is invited to the following authorities:
Southern Pac. R. Co. v. U. S., 168 U. S. 49, 18 Sup. Ct. 18, 42 L. Ed.
355; Cromwell v. Sac County, 94 U. S., 353, 24 L. Ed., 195; Nichols
v. Dibrell, 61 Texas, 541; Birckhead v. Brown, 5 Sandf., 145; Boyd v.
Alabama, 94 U. S., 645, 24 L. Ed., 302; Beloit v. Morgan, 7 Wall., 621,
19 L. Ed., 205; McDonald v. Insurance Co., 65 Ala., 358; Freem. on
Judg., secs. 256-259; Bernard v. Mayor, etc., 27 N. J. Law, 412; Bige-
low, Estop., 4 ed., p. 95; Town of South Ottawa v. Perkins, 94 U. S.,
260, 24 L. Ed., 154; Packet Co. v. Sickles, 5 Wall., 592, 18 L. Ed., 550;
Goodrich v. City of Chicago, 5 Wall., 566-574, 18 L. Ed., 511; Stewart
v. Lansing, 104 U. S., 505, 26 L. Ed., 866; 2 Black, Judgm., sec. 750,
and authorities cited.

Opinion delivered February 8, 1900.

OPINION ON REHEARING.

WILLIAMS, ASSOCIATE JUSTICE.—Upon full consideration of the
motions of Charles and Carrie Babbige and of E. G. Hanrick, nothing
has been found requiring further discussion except the point raised by
the motion of E. G. Hanrick, which was referred back for further argu-
ment.

All of the grounds of the motions except that are therefore disallowed.

We are convinced, however, that the defense of E. G. Hanrick, based
upon the judgment in the Eubanks case as an estoppel against Nicholas
Hanrick to assert his title to any of the land in the Zarza grant, should
have been sustained. The judgment was pleaded as an estoppel ap-
plicable only to Nicholas Hanrick's claim to an interest in that grant,
and hence its effect upon his title to lands in the Serda grant can not
be considered.

The case was originally briefed and submitted upon the findings of

the trial court alone, and in them there was no statement that the demurrer in the Eubanks case was sustained upon the ground that the plaintiff therein was not an heir of Edward Hanrick; the only finding on this point being that a general demurrer was sustained and final judgment rendered against the plaintiff. We now find in the statement of facts the substance of the pleadings and the judgment in that case, from which it appears that the demurrer was rested and sustained upon the ground that the facts alleged by plaintiff showed that no title had descended to him by inheritance from Edward Hanrick. While the cause of action in that case was not the same as that now asserted, the question as to Nicholas Hanrick's right to inherit from Edward was and is directly involved in and common to both cases, and was expressly adjudicated in the former. Although the judgment of the court was, as we formerly held, only a denial of the right to recover the particular land there in controversy, its estoppel is much broader and concludes the parties upon every question which was directly in issue and was passed upon by the court in arriving at its judgment. Cromwell v. Sac County, 94 U. S., 353; Nichols v. Dibrell, 61 Texas, 541; Birckhead v. Brown, 5 Sandf., 145; Boyd v. Alabama, 94 U. S., 645; Southern Pac. R. Co. v. United States, 168 U. S., 49; Beloit v. Morgan, 7 Wall., 621; McDonald v. Mobile Insurance Co., 65 Ala., 358; Freem. on Judg., sec. 256-259.

In the case first cited, the difference between the rule as to the effect of a judgment upon the cause of action adjudicated, and that as to the scope of the estoppel upon questions in issue and determined, where they arise in subsequent litigation between the same parties concerning a different cause of action, is thus stated: "There is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action. In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered."

That the estoppel concludes the parties upon the questions of law, as well as those of fact which are in issue, is fully established by the other authorities cited, as well as the further proposition that a final judgment upon the merits on demurrer is equally conclusive of questions decided, as are other judgments. There are a few cases which do not recognize the rule as above quoted, but they are opposed to the great weight of

authority and are not regarded as sound. Counsel for Nicholas Hanrick do not controvert the rule, but urge that it is inapplicable here for the reason that E. G. Hanrick's relation to the former action, involving Eubanks' title to the land there sued for, was not such as to make the determination of the issues therein raised binding either on him or the plaintiff therein in other suits involving their claims to other lands. Their position is best stated in their own language: "E. G. Hanrick was vouched in as warrantor by Eubanks, and put in the exceptions asserting noninheritable alienage, not in his own interest or right, but in the interest and right necessarily of Eubanks. In doing so, he was exercising the statutory right of defending, either in his own name or the name of his warrantee, on behalf of the warrantee. He, in his own right and interest, was not an adversary of the plaintiff; he, in his own right and interest, was not a party and could not properly have been. In appearing and defending, he did so merely in the exercise of his right as warrantor, in the interest and on the title of his warrantee and not his own, and in the representative capacity or quality of warantor."

E. G. Hanrick was a party to that action, according to every definition of the term. 1 Greenl., Ev., 522, 523. It was his right and his duty "to make such defense as if he had been the original defendant in the action." Rev. Stats., art. 3552. The plea that the plaintiff had no capacity to inherit the land from Edward Hanrick, and hence no title to land claimed as heir, was such a defense. He made it and established it by the judgment of the court. This meets every condition of the rule laid down above. The same question upon which Nicholas Hanrick now relies was put in issue between the same parties and was determined. To hold that it may be again put in issue where it arises between these parties in another controversy, would be to contradict the very terms, as well as the spirit and the purpose, of the rule. E. G. Hanrick, as he was bound to do, defended against plaintiff in the former suit the title which he had conveyed to Eubanks, and controverted the plaintiff's right to inherit the same property. In so doing, he asserted his own right in the same capacity or quality in which he now asserts it. That his object in doing so was to make good the title of Eubanks and protect his warranty, does not affect the question, since he was a party and had the right to make it and enforce it by all the means open to other litigants. The authorities are as decisive of this branch of the question as of that first discussed. Greenleaf, supra; Castle v. Noyes, 14 N. Y., 329; Lovejoy v. Murray, 3 Wall., 1, and authorities cited; Freem. on Judg., secs. 174, 179, 186, 187.

It is urged, also, that the plea of estoppel was not sufficient to let in evidence to sustain the defense. The plea was very general and would doubtless have been held insufficient on special demurrer, but was sufficient, without such objection, to admit evidence. It specified the proceeding in which the judgment was rendered, stated the parties to it, and alleged that the plaintiff therein claimed title to the Zarza grant

by inheritance from Edward Hanrick, and that the question as to his right to do so was asserted by his petition, and was, on demurrer of the defendant, adjudicated against him. This shows that the same title by inheritance here asserted, was, by the judgment, held insufficient.

The rehearing asked for by E. G. Hanrick will be granted, and the judgment of the Court of Civil Appeals will be further reformed so as to deny to Nicholas Hanrick a recovery as to lands in the Zarza grant, and to adjudge the interest therein recovered by him to E. G. Hanrick.

*Judgment reformed.*

Delivered March 29, 1900.