72 U.S. 566
 18 L.Ed. 511
 5 Wall. 566
 GOODRICH
v.
THE CITY.
 December Term, 1866
 
 GOODRICH filed a libel in the District Court for the Northern District of Illinois, in a cause of damage, civil and maritime, against the City of Chicago, in personam.
 The libel alleged that he was the owner of the steamer Huron; and that, on the 27th of March, 1857, while leaving the port of Chicago, the vessel ran against a sunken wreck in the Chicago River and was sunk; that, prior to this damage done, the city had been vested with exclusive jurisdiction over the river as a common public navigable river and highway by the State of Illinois, and with all the necessary means to provide funds for defraying the expenses incident thereto; that the city accepted the act of the legislature, and had ever since assumed the exclusive jurisdiction and control over the river harbor; that on the 20th day of May, 1856, the city had passed an ordinance for the removal, without delay, of any obstruction to free navigation, by which it was ordained that whenever there should be in the harbor any vessel insecurely fastened, adrift, sunken, &c., and which might require to be fastened, raised, &c., IT SHOULD BE THE DUTY of the harbor master to secure, raise, or remove such vessel WITHOUT DELAY; that in April, 1856, the city appointed one Ingalls harbor master under the said ordinance, and at the time of said damage he was such harbor master, vested with full control and management of the harbor, and that it was his duty, as agent of the said city, to remove all such obstructions to the free and safe navigation of said harbor; that in November, 1856, a schooner had been sunk near the mouth of the river, and became an obstruction to the safe navigation of it; that the city assumed the exclusive right to remove the same, and did, by their said harbor master, undertake and commence the removal of the said sunken wreck, by hitching thereto a steam-tug, and thereby attempting to raise and remove the same as they were bound to do, but did not complete the work, nor raise and remove the said wreck, as they had exclusively undertaken to do, but worked on the said sunken vessel, endeavoring to raise the same, and pulled several pieces of timber from the said vessel in the attempt to raise and remore her, but without raising or removing the same, did (as the libellants believed), loosen the said vessel in its bed; and negligently and carelessly left the vessel until the 29th of March, 1857, by means whereof during that time, by the action of the winds and currents, the wreck became drifted further into the channel of the river, and during all the time aforesaid was kept in the channel by the respondent under water, so that the same could not be seen; and without fixing or placing any buoy or signal to mark the place of the said sunken wreck; and that in consequence of the negligence of the city the said steamer Huron ran on to said sunken wreck and was sunk, in ignorance of its locality and without fault on her part, with damage to the libellants of $19,487.
 The respondent having set up as defences, want of jurisdiction in the District Court; that the city was not liable on the facts of the case, and was not under any legal obligation to remove the sunken vessel, and that the accident had occurred through carelessness and unskilful conduct of the Huron, added to them by way of estoppel, the fact of a former judgment on demurrer to the declaration, in an action on the case between the same parties in the Supreme Court of Illinois.
 The declaration in the suit thus set up as an estoppel alleged:
 1. That under a statute of the State of Illinois of February 14, 1851,[1] it became the duty of the city to remove and prevent all obstructions in the Chicago River and harbor, and that the city was authorized to levy and collect taxes for that purpose.
 2. That the city assumed to discharge the duties imposed, and for that purpose levied and collected taxes, and controlled and regulated the said river and harbor, and that by means thereof and by the said State statute, it became and was its duty to remove and prevent all obstructions therein.
 3. That the city undertook and entered unto the discharge of its duties and obligations by the passage of necessary ordinances, rules, and regulations, authorized by the act of 1851, whereby it became and was its duty to remove all obstructions, &c.
 4. That the Chicago River and harbor was a public highway and nevigable stream, and that the city, not regarding its duty in the premises, on the 29th of March, 1857, and for five months prior thereto, had negligently and carelessly suffered and permitted the obstruction spoken of to remain in the river, and that the city, although knowing that the wreck was under water and out of sight, neglected to place any buoy or signal thereon to indicate its position.
 5. That by reason of the premises, on or about the 29th day of March, 1857, the Huron in passing through the river was accidentally and without any want of care and skill on the part of the owners, or those in charge of her, run on or against the said sunken wreck.
 And it appeared that, on a demurrer to this declaration, judgment had been rendered finally in the Supreme Court of the State for the city.[2]
 The District Court held judgment in the Supreme Court of the State no estoppel; and the case being deemed otherwise clear, gave judgment for the libellant.
 On appeal to the Circuit Court, that court held, that the decision in the State court was 'an authoritative adjudication, denying that there is an obligation imposed by law on the City of Chicago to remove obstructions from its river and harbor,' and that it was thus decisive, against the libellants, of the present action. The decree of the District Court was accordingly reversed; the Circuit Court (DAVIS, J.) expressing, at the same time, the opinion 'that the facts of the case would sustain the claim made by the libellants, if the court was relieved from the embarrassment' of the decision referred to; and stating further 'that if this question was an open one in Illinois, the court should have no hesitation in holding that a legal obligation is imposed on the city to remove obstructions from the river; and that it is bound to make full redress to every person injured by reason of its failure to perform its duty; that the true interest of commerce, and the best interests of the city, would be promoted by such a construction, and that it is sanctioned by principle and authority.'
 The case was now here on appeal from this decree by the Circuit Court reversing the former one of the District Court.
 
 Messrs. Goodwin, Larned, and Goodwin, for the appellants, owners of the steamer:
 
 There is no ground of liability set forth in any count in the declaration in the State court case, but that of 'the omission of the city to take action for the removal of the wreck.'
 The case made by the declaration proceeds upon an absolute obligation on the part of the city to remove all obstructions, growing out of the power conferred, and the ordinances establishing the proper officers and providing the needful means for the exercise of that power; and the ground of action is rested wholly upon the omission of the city to exercise the power in the given case. There is no averment in the declaration, as there is pre-eminently in the libel, that the city ever undertook or assumed to remove the wreck, or entered upon the work of such removal; but, on the contrary, the declaration excludes the idea of such assumption of responsibility or undertaking on the part of the city by its positive allegation that the city neglected and refused to take any such action, but permitted the wreck to remain, and would not undertake its removal.
 And the Supreme Court being called upon to decide, on general demurrer, as to whether such a declaration had set forth a legal ground of action against the city, decided that it did not, because the city were not bound to undertake the removal of any obstruction in the harbor, except they elected so to do; that it was matter of legal option with them whether they would or would not, in any given case, exercise the power so conferred; that the passage of ordinances and the providing of the proper officers and means to perform the work in such cases as they should elect to undertake it, did not impose any legal obligation to undertake any particular work; and therefore, notwithstanding all the allegations of the declaration respecting the charter, and the ordinances, and the appointment of harbor-master, were admitted, yet it did not follow that the city were bound to undertake the removal of this or any other obstruction; and so no sufficient cause of action was set forth in the declaration.
 Now, giving to this decision full effect, it does not touch the case made by this libel. It decides that a case will not lie against the city for mere omission to act, for the mere non-assumption of the power conferred over the harbor by the charter, by neglecting to undertake to remove a particular obstruction.
 The question of liability, in all cases where the city had elected to act under the power, and had entered upon and assumed the work, is therefore an open question, and this court is at liberty to decide such a case in conformity with their own views of the law and the facts.
 It should be quite sufficient in a cause where the merits of the case seem confessedly with the plaintiff, and where sound reason and authority sustain his action, to show that the case made by the libel is not within the express point decided by the Supreme Court of Illinois; and this court should, perhaps, if necessary, be 'astute' to take the case out of that decision.
 As a mere technical bar, the force of a judgment at law, when pleaded in admiralty, may be doubted on authority. In England,[3] it has been held, by Dr. Lushington, in The Ann and Mary, that an action at common law for damages caused by a collision, will not affect the jurisdiction of the admiralty, and that the verdict of the jury, upon the facts of the case, will not be conclusive upon the judgment of the admiralty court. If this is so, the whole matter of the State decision falls to the ground.
 
 Mr. Irwin, contra:
 
 That a judgment, on general demurrer to a declaration, is a judgment on the merits, conclusive in a subsequent suit where the parties and the cause of action are the same, is reported law so far back as the time of Croke[4] and Coke,[5] and has been frequently decided with us.[6]
 And notwithstanding the dicta of Dr. Lushington to the contrary, in The Ann and Mary, there is no reason why the rule should not apply with as much force in courts of admiralty as in regard to any other.
 In Taylor v. The Royal Saxon,[7] it was held that the pendency of a replevin in a State court to settle the right of property in a vessel is a bar to a libel in the admiralty to settle the same right between the same persons, &c. Grier, J., there says:
 
 
 1
 'But it is denied that this is a case of concurrent jurisdiction because of the different form and course of proceedings in a court of admiralty. This proceeding, it is said, is in rem, that all the world is a party, while the action of replevin is a mere personal action of trespass; that, in the one case, the thing passes into possession of the court; in the other, the delivery is made by the officer, without any order or judgment of the court. These distinctions, though ingenious, do not constitute a difference or furnish an argument to justify the court of admiralty in disregarding the disposition made of this property by the law of Pennsylvania, whether it be temporary or final.'
 
 Again, says the same judge:
 
 2
 'It is true that the court of admiralty, from the peculiarity of her process and modes of proceeding, is more competent to render speedy and exact justice to the parties than courts of common law (more especially in disputes between part-owners); but it cannot, on that assumption, disregard the disposition made of this property by the law of Pennsylvania, whether it be temporary or final.'
 
 
 3
 This reasoning, though applied by his honor to what was in effect a plea of lis pendens, applies with equal, if not greater force, to a plea of res adjudicata.
 
 
 4
 Now, in this case, the declaration shows that the same parties are attempting to litigate the same subject-matter, or points or questions in admiralty that were adjudicated and settled in the State court.
 
 
 5
 Look at the declaration as set out supra, p. 568, and at the libel as set out just before it, at pp. 566-7. It will be seen that the allegations in both are, in legal substance, the same. And the parties and subject-matter of both actions are undeniably the same. They are both actions to recover damages sustained by reason of an alleged obstruction in the Chicago River. The vessel injured is the same,—the Huron; the time and cause of injury are the same; the liability of the city is placed on the same ground in both actions, to wit, a duty imposed in both cases by the same act of the legislature, and the same ordinances of the city, and the neglect to perform or discharge it.
 
 
 6
 Nothing in the libel or in the facts in the case changes the cause of action from what it was in the State court. The liability of the city is based on its nonfeasance in both courts; and does not the Supreme Court of Illinois decide the questions raised in the case at bar against the appellants?
 
 
 7
 It matters not, here, and so far as the defence of an estoppel is concerned, whether the decision in the State court was right or wrong. It is sufficient that the parties appellant selected that tribunal to litigate their supposed grievances. They must be content with the result. If a party, when defeated in one tribunal, is permitted to take his chance in another, there can be no end to litigation; for if defeated in the second, he may in like manner resort to a third, and so run the chance of all the courts in the country. Litigation is harassing and vexatious enough to parties at best, but break down and destroy the doctrine of res adjudicata, and it would be intolerable, wholly.
 
 
 8
 Mr. Justice SWAYNE delivered the opinion of the court.
 
 
 9
 In the view which we have taken of the case, it will be necessary to consider but a single point.
 
 
 10
 The appellants filed their libel to recover damages for the sinking of their steamer Huron, in the Chicago River, near its mouth. The casualty was caused by the steamer running against a sunken wreck. The libel alleges that it was the duty of the city to have it removed, and that it was guilty of negligence in not having done so. It alleges further, that the city entered upon the work of removal, but abandoned it before the result was accomplished.
 
 
 11
 Among the defences set up by the answer of the respondent was, that of a final judgment in the Supreme Court of Illinois, upon a general demurrer to a declaration in an action at law by the appellants against the respondent for the same cause of action.
 
 
 12
 The court below sustained the defence, and upon this ground, and another not necessary to be stated, dismissed the libel.
 
 
 13
 The record of the action at law is found among the proofs in this case. Upon a careful examination of the declaration and of the libel, we are constrained to say, there is no such difference in the cases which they respectively make as can take this case out of the operation of the principles of res adjudicata.[8]
 
 
 14
 Whatever the result might be here, if this obstacle were out of the way, we have no choice but to apply the law in this as in other cases.
 
 
 15
 DECREE AFFIRMED, WITH COSTS.
 
 
 
 [1]
 The same statute referred to in the libel in admiralty.
 
 
 [2]
 Goodrich v. The City, 20 Illinois, 445.
 
 
 [3]
 2 W. Robinson, 190.
 
 
 [4]
 Ferrer et al. v. Arden, 2 Croke Eliz. 668.
 
 
 [5]
 Ferrer's Case, 6 Reports, 7.
 
 
 [6]
 Bouchaud v. Dias, 3 Denio, 243; Robinson v. Howard, 5 California, 428; Perkins v. Moore, 16 Alabama, 17.
 
 
 [7]
 1 Wallace, Jr., 333.
 
 
 [8]
 Duchess of Kingston's Case and the notes, 2 Smith's Leading Cases, 424; Bendernagle v. Cocks, 19 Wendell, 208.