THE J. R. LANGDON.

(Circuit Court of Appeals, Sixth Circuit. June 15, 1908.)

Nos. 1,753–1,760.

1. MARITIME LIENS—ENFORCEMENT—SUITS IN PERSONAM.

Vessel property, like other personal property of shipowners, may be reached and subjected to the liabilities of the owners in a personal suit against them, but in such case only the interest of the owners, as such, may be subjected to sale, and persons holding maritime liens on the vessels cannot be compelled to submit their claims to the court in such suit; its only effect being to delay the enforcement of their liens during the time the vessels are in the actual custody of the court.

2. JUDGMENT—QUESTIONS CONCLUDED—RIGHTS OF INTERVENER.

Libelants, who had furnished coal to steamers owned by a corporation, intervened in a creditor's suit against the corporation in which the court by its receiver had taken possession of the vessels, and set up their claim to a maritime and statutory lien and asked its enforcement. The court ordered the vessels sold, requiring the purchaser to assume and pay any lien which it might thereafter establish. After the sale the right of libelants to a lien was tried and decided, adversely to them. *Held* that, having voluntarily submitted it to that court, such question was res judicata as between libelants and the purchaser, and that libelants could not thereafter maintain a suit in rem in admiralty against the vessels to enforce a lien thereon for their claim.

3. SAME—RES ADJUDICATA.

When a fact or question is distinctly put in issue as a ground of recovery, and is directly determined by a court having jurisdiction to make such determination, that fact, right, or question cannot be again disputed in a subsequent suit between the same parties or their privies.

Appeals from the District Court of the United States for the Northern District of Ohio.

For opinion below, see 145 Fed. 64.

Harvey D. Goulder, for appellants.
Roger M. Lee, for appellees.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. These suits are proceedings in rem against the eight steamers named in the caption. The cause of action is for fuel supplied to each of them by appellants during the season of 1898. All of the vessels were then owned by the Ogdensburg Transit Company, a Michigan corporation, and the coal was supplied to them at the ports of Cleveland, in Ohio, and Sandwich, in the Dominion of Canada. At the close of the season that company executed its promissory note for the aggregate sum due. Each libel is like every other except in name and amount. Each avers that the coal was supplied

on the master's order, at a foreign port and upon the credit of the particular vessel supplied. The respondents are the Rutland Transit Company, who acquired title through a mortgage foreclosure suit and a general creditor's bill in the Circuit Court of the Eastern District of Massachusetts. The facts in each case are the same, and all the suits were heard upon one record.

Two defenses are made: First, that the appellants asserted the identical claims now set up as maritime liens in the creditor's suit referred to, and that the defense of no lien was made and sustained and their intervention dismissed for that reason; second, that the coal supplied was furnished under a contract with the Ogdenburg Transit Company, and not upon the credit of the vessels as averred. The defense of res adjudicata was sustained in the court below, and the libels dismissed without consideration of the question of a lien upon its merits. In the view we take of the case we shall only consider this defense of former adjudication. That appellants did intervene in the creditor's suit referred to and the issue of lien or no lien was presented and decided adversely to them is not controverted. Among other things, in answer to this plea they say: That they did not voluntarily intervene in that case. That the vessels were then in the actual possession of the Circuit Court and being operated by its receiver. That they could not enforce their liens through the admiralty court while the steamers were thus held, and they were in danger of displacement through later maritime contracts and torts fastening liens upon the vessels while being operated by the court's receiver. That their intervention was for the limited purpose of obtaining insurance against displacement through contracts and torts of the receiver. Next they say, that, however their intervention be construed, the Circuit Court had no jurisdiction to determine the question of the existence or non-existence of a maritime lien for coal supplied, and that its determination that no lien existed was absolutely void for want of jurisdiction over the subject-matter.

It is a misapprehension of the intervention of the libelants in the Circuit Court case to characterize it either as a nonvoluntary appearance or one for the narrow purpose of obtaining benefit of insurance against subsequent maritime liens, contractual or tortious. Appellants were not brought in as parties to that suit. They voluntarily intervened by petition and set up their claims as both statutory and general liens in identically the same terms they now assert the same claims. After stating the facts, they said:

"Your petitioners say that by the general maritime law they are entitled to and have a lien enforceable in a court of admiralty upon each of said steamers, their engines, boilers, boats, tackle, etc., for the full amount of each of said claims. * * * And by virtue of said liens, under the general maritime law and under the statute of Ohio, your petitioners' said liens against said steamers respectively are entitled to payment and satisfaction from said steamers and from the use thereof in preference to any and all claims against said defendant, or its property, excepting maritime liens of equal or higher rank."

The petition then stated that there was danger of the displacement of their liens through later liens of the same character or through mari-

time torts, resulting from the navigation of the vessels under the court's orders. Upon the ground that they had a maritime lien, the petition concluded by praying the court to direct the receiver to pay their claims "as preferred liens against said steamers, or that an order may be entered requiring said receiver to pay to your petitioners the earnings of said steamers over and above the cost of operation until said several liens have been satisfied in full, and that said receiver may in that event be also required to insure said steamers in some good and responsible insurance companies against the perils to which said property is being subjected by such use, with loss payable to your petitioners and other holders of maritime liens as their interest may appear, and for such other and further orders as may accord with justice and petitioners' rights under the circumstances."

This petition was filed September 9, 1899. The receiver answered at once and admitted the liability as a debt of the transit company, but denied that the petitioners were entitled to any lien, maritime or statutory, asserting that the coal had been supplied under a written contract with the owners and upon their credit only. An answer was also filed by the trustees under a mortgage to secure bonds denying any precedence of the claims of the libelants over their vessel mortgage. September 20, 1899, a decree was entered foreclosing the vessel mortgage and directing a sale of the eight steamers here involved and that the proceeds of the sale should be applied as follows: First, to costs of the cause, receiver's services, fees of solicitors, etc., then to the mortgage debt and the surplus, if any, to such purposes as the court should direct. By express direction of the court the purchaser, in addition to the amount of his bid, was required to pay "all maritime or statutory liens upon the said steamboats or any of them which this court shall hereafter allow and order to be paid."

Under this decree the vessels belonging to the Ogdenburg Company were sold at public sale for $300,000. As the mortgage foreclosed was to secure bonds aggregating $600,000, it will be seen that there was no surplus for any purpose. On December 18, 1899, the sale was confirmed upon the express condition that the court should have power to retake and resell, if the purchasers should fail to pay off, in addition to their bid, any maritime lien which the court might adjudge to exist against the vessels so sold.

Immediately following this confirmation, and upon the same day, an order was made referring this intervening petition to a special master to take proof and report "whether or not a maritime or other lien exists against the steamers lately belonging to the Ogdenburg Transit Company. * * *" The master reported in favor of the lien claimed, but upon exception the Circuit Court ruled against the lien, finding that the fuel had been supplied under a contract with the owning corporation and upon its credit. Upon appeal to the Circuit Court of Appeals, this decree was affirmed. Cuddy et al. v. Clement et al., 113 Fed. 454, 51 C. C. A. 288. More than a year after this affirmance these libels were filed. Thus, while it was true that the possession of the vessels by the Circuit Court operated to delay the filing of any libel in the District Court until the hand of the Circuit Court should be raised and the ves-

sels delivered to the purchaser under the decree of sale, that hindrance was removed on December 18, 1899, when the sale was confirmed. From that moment a court of admiralty was at liberty to determine and enforce any maritime liens which might exist, for the effect of the sale under the creditor's bill was only to pass the right, title, and interest of the owners to the purchasers, subject to any maritime lien which might exist. The libelants might at that time have dismissed their petition and instituted a proceeding in rem such as they did after the failure of their experiment in the Circuit Court; but as they had a decree under which the purchaser was obligated, in addition to his bid, to assume and pay off any such maritime lien as they had asserted, they chose to have their claim of lien referred to a master and finally adjudicated by the Circuit Court, being thus assured of payment in case they were found to have such a lien. It is of no avail to say now that they only sought to obtain insurance which would protect them against loss of the vessels while they were delayed in enforcing their claims by a suit in rem or from a displacement of their liens by the creation of other liens of the same or higher character while the vessels were being operated by the receiver. That aspect of the petition was purely secondary, for their prayer was that their claims should be recognized as maritime or statutory liens and paid by the receiver as preferred over the mortgage and all other claims except claims of like character.

We come then to the question as to whether the voluntary submission of the question as to whether they had a maritime lien to the adjudication of the Circuit Court concludes them from now asserting such a lien in the face of the decree of that court that they had no such lien. The jurisdiction of the Circuit Court of the United States for the purpose of winding up the affairs of the Ogdenburg Transit Company and enforcing a mortgage upon the ships of the fleet owned by that company was indisputable. So long as that court retained possession, that possession and jurisdiction was exclusive of every other court. Even the warrant of a court of admiralty could not properly dispossess the officers of the Circuit Court, and a proceeding in rem is not conceivable without seizure of the res. The Royal Saxon, 1 Wall. Jr. 311, Fed. Cas. 13,803; Moran v. Sturges, 154 U. S. 257, 277, 283, 14 Sup. Ct. 1019, 38 L. Ed. 981; Taylor et al. v. Carryl, 20 How. 583, 601, 15 L. Ed. 1028. Neither is it disputable that the original jurisdiction conferred upon the District Court to enforce maritime liens by a proceeding in rem is exclusive of all other courts, federal and state. Such a remedy is unknown at the common law, and common-law remedies are not applicable or appropriate to enforce such maritime liens. The provision of the jurisdictional statute saving common-law remedies does not include any in rem proceeding. Vessel property, like other personal property of ship owners, can be reached and subjected to the liabilities of the owners in a proceeding by which the owners are personally sued; but in such case only the interest of the owners as such may be subjected to sale. The Moses Taylor, 4 Wall. 411, 18 L. Ed. 397; The Hine v. Trevor, 4 Wall. 555, 568, 18 L. Ed. 451; The Belfast, 7 Wall. 624, 644, 19 L. Ed. 266; Moran v. Sturges, 154 U. S. 256, 276, 14 Sup. Ct. 1019, 38 L. Ed. 981. The proceeding in the Circuit Court to wind

up the Ogdenburg Transit Company, as well as the mortgage foreclosure consolidated or incorporated with the general creditor's suit, was not a proceeding in rem, but a proceeding based upon the liability of the Ogdenburg Company for debts created upon its personal credit. Persons holding maritime liens could not have been compelled to submit their claims to the determination of that court, and the only effect of its proceeding, with actual possession of vessels subject to such liens, would be to delay their enforcement while such custody continued. Under the general maritime law such liens confer the right to proceed in rem to subject the vessel itself irrespective of the presence of owners to satisfaction of the lien, and a sale made in such a proceeding carries the title against all the world. Unless therefore the appellants are barred by their voluntary submission of the question of lien or no lien to the Circuit Court and the judgment of that court against such lien, the proceedings in the Circuit Court will not have the effect of displacing their liens, and they are now at liberty to ask their enforcement in this proceeding in rem. Moran v. Sturges, 154 U. S. 256, 282, 283, 14 Sup. Ct. 1019, 38 L. Ed. 981. and cases cited.

But it is said that, inasmuch as the Circuit Court could not have maintained an in rem proceeding for the determination and enforcement of a maritime lien, the determination that the appellants had no such lien was only incidentally or collaterally involved, and therefore not a bar to the reconsideration of the same question between the same parties, or their privies, when presented in a direct proceeding for the determination and enforcement of the lien there claimed and denied. They cite: Cavanaugh v. Buehler, 120 Pa. 441, 14 Atl. 391; Marvin v. Dutcher, 26 Minn. 391, 4 N. W. 685; The Duchess of Kingston's Case, 2 Smith's Leading Cases, 573 et seq.; Van Fleet's Former Adjudication, 28, 29. These cases are not much in point for the general principles of res adjudicata are well settled. The trouble in applying these principles comes from the difficulty of determining when a fact, or right, or question once decided between the same parties was only collaterally or incidentally involved so as not to be conclusive when again presented between the same parties in another controversy.

It is not enough to say that the Circuit Court had no jurisdiction to have maintained an in rem proceeding to determine and enforce a maritime lien. That court had jurisdiction for certain purposes over the property of the Ogdensburg Transit Company, including the very steamers which the libelants now wish to subject to the satisfaction of their claims. Personal liability of the owner is not inconsistent with a maritime lien. In this very case the libelants accepted a promissory note of the Ogdensburg Transit Company for the aggregate sum of their several claims now asserted. To save any question of waiver of the lien they provided that "when paid should be in full for fuel supplied the Ogdensburg Transit Company during season of 1898." The St. Lawrence, 1 Black 522, 17 L. Ed. 180. A remedy in personam as well as a remedy in rem existed. That the remedy in personam might be pursued in either the Circuit Court or in a state court is clear. In respect to remedies in personam the jurisdiction of the Circuit, Dis-

trict, and state courts may be said to be concurrent. The Belfast, 7 Wall. 625, 644, 645, 19 L. Ed. 266. Thus in that case it is said:

"Proceedings in a suit at common law on a contract of affreightment are precisely the same as in suits on contracts not regarded as maritime, wholly irrespective of the fact that the injured party might have sought redress in the admiralty. When properly brought, the suit is against the owners of the vessel, and in states where there are attachment laws the plaintiff may attach any property not exempted from execution, belonging to the defendants.

"Liability of the owners of the vessel under the contract being the foundation of the suit, nothing can finally be held under the attachment except the interest of the owners in the vessel, because the vessel is held under the attachment as the property of the defendants, and not as the offending thing, as in the case of a proceeding in rem to enforce a maritime lien. Attachment in such suits may be of the property of nonresidents or of defendants absent from the state, as in suits on contracts not maritime, and the same rules apply in respect to the service of process and notice to the defendants."

Whether a suit in personam implies necessarily a waiver of any maritime lien existing for the same claim we need not consider. The Supreme Court, in The Kalorama, 10 Wall. 204, 218, 19 L. Ed. 941, waived the question. That a judgment in personam would not be a bar to a subsequent suit in rem was held by Benedict, J., in The Brothers Apap (D. C.) 34 Fed. 352, and by Townsend, J., in The Cerro Gordo (D. C.) 54 Fed. 391. To the same effect are the cases of The Bengal, Swabey, 468; The John & Mary, Swabey, 471; Murphy v. Granger, 32 Mich. 358; and Toby v. Brown, 11 Ark. 308. For this purpose appellants might go into the Circuit Court and assert their claims as ordinary debts. That they might obtain a preference over ordinary debts out of the fund in court they asserted that for their security they had a maritime lien. The Circuit Court without exercising any of the exclusive jurisdiction of a court of admiralty might very well say, as it did: "Very well, if you have such a lien, you shall be paid before other creditors out of the proceeds of sale, and we will require the purchaser, in addition to his bid, to assume and pay off any such lien, if one you have." If the sale had produced a fund large enough to discharge every class and rank of liability, is there any reason for saying that if one holding a maritime lien on account of supplies might not voluntarily intervene and ask that his lien be determined and paid? Can there be any doubt but that such a claimant would be as much concluded by an adjudication that he had no lien as he would be by a finding that his claim had been paid or was fraudulent? The Circuit Court did have jurisdiction to determine the claims of any one who voluntarily came in for the purpose of asserting any right to be paid out of the fund arising from the sale of those vessels. That a maritime lienor could not have been brought in may be conceded. He had the right to wait and pursue his remedy against the vessels in the hands of the purchaser from the Circuit Court; but if he elects to assert his claim to the fund which the Circuit Court had the undoubted right to distribute, and the determination of his right to be paid out of that fund in preference to the general creditors of the owners necessarily required the determination of the question as to whether he had a maritime lien, such determination operates as res adjudicata in respect

to the same matter when presented between the same parties, or their privies, in a subsequent proceeding in rem to assert and enforce the same claim of maritime lien. The question upon which the right of the appellants to receive full payment out of the fund in the Circuit Court is the same question upon which his right to enforce his lien here is based. The defendants in the Circuit Court denied the existence of a state of facts necessary to create a lien. The defendants here are in privity with the defendants there, for they trace title to that proceeding and took title subject to any maritime lien which the appellants might establish in that case. When a fact or question is distinctly put in issue as a ground for recovery and is directly determined by a court having jurisdiction to make such determination, that fact, right, or question cannot be again disputed in a subsequent suit between the same parties or their privies. Hopkins v. Lee, 6 Wheat. 109, 113, 5 L. Ed. 218; Smith et al. v. Kernochen, 7 How. 198, 216, 12 L. Ed. 666; Southern Pac. Ry. Co. v. United States, 168 U. S. 48, 18 Sup. Ct. 18, 42 L. Ed. 355; Estill County v. Embry, 112 Fed. 882, 50 C. C. A. 573; Brown D. J., in The Tubal Cain (D. C.) 9 Fed. 834, held that a judgment in a state court in a suit by the owners of the Tubal Cain for damages of a breach of a contract, in not furnishing cargo as agreed, was a bar to a subsequent libel in admiralty by the charterers for not waiting longer or going elsewhere for a cargo as desired. He said:

"The claims of each party in the two actions is based solely upon an alleged entire breach of the charter party by the other and an entire failure in its performance. * * * The issues therefore in both actions are substantially the same. The issue has been tried upon its merits in the action in the state court, and a judgment recorded in favor of the respondents. * * * Its operation is not as a former judgment recovered upon the same cause of action, for the cause of action is not the same, but as an estoppel of record by an adjudication of the same identical matter once heard and determined between the parties."

In The City of Lincoln, 25 Fed. 843, the libel was for damages to the cargo by the breaking down of a pier through the negligence of the wharfinger. One defense was a former adjudication by a judgment in the Circuit Court in an action by the wharfinger against the owners of the vessel to recover damages for breaking down the pier. The owners counterclaimed for damages due for detention and loss to cargo. The jury found both parties guilty and that neither could recover. Brown, Judge, after stating the facts, said:

"It thus appears that both the parties, who are the respondents in the present case, voluntarily submitted their claims to a court of common law; each claiming their entire damages against the other. The wharfingers, by their complaint, and the owners of the steamer, by the counterclaims in their answer, having thus voluntarily appealed to a common-law forum, and had their day in court upon this question, I think that the determination then made, that there was mutual fault, should be held binding upon them, in any other action where the same question arises as between themselves. In cases turning upon questions of navigation, indeed, the verdict in a common-law court has been held not to be binding in a court of admiralty, on account of the superior means for determining such questions supposed to belong to admiralty tribunals. The Ann & Mary, 2 Wm. Rob. 189. But in other classes of cases, I apprehended a prior determination and judgment in a court of common law are binding as between the same parties in admiralty, whether pleaded or given in evidence as respects the same material facts

again in litigation. Goodrich v. The City, 5 Wall. 566, 18 L. Ed. 511; Taylor v. Royal Saxon, 1 Wall. Jr. 333, Fed. Cas. No. 13,803; The Tubal Cain (D. C.) 9 Fed. 834, 838, and note. Undoubtedly, the verdict and judgment in the former action between the present respondents is no adjudication or bar, as respects the libelants in this case, who were not parties to that suit. The present action, however, concerns the same subject-matter, and the very question once determined as between these codefendants now arises again as between themselves. The analogy of the rule in equity would seem to be applicable, which makes a former decree determining the rights of codefendants binding in a subsequent action between them on the same subject-matter. It is immaterial, it is said, how the parties are arranged, whether upon the same side or upon opposite sides in the cause, so long as their rights are directly in litigation, and each has the opportunity of asserting his claim and his defense, and to cross-examine the witnesses. Farquharison v. Seton, 5 Russ. 45, 62; Daniell, Chancery Pr. *1010, *1013; Nevil v. Johnson, 2 Vern. 447."

Goodrich v. City of Chicago, 5 Wall. 566, 18 L. Ed. 511, was a libel in the District Court against the city of Chicago in personam to recover damages to libelant as owner of the steamer Huron for injuries sustained from the vessel running against a sunken wreck in the Chicago river. The action was based upon the supposed duty of the city to keep the river clear, and that it had been negligent in this regard. One of the defenses was a judgment of a state court upon a general demurrer to a declaration in an action at law by the libelant against the respondent for the same cause of action. The judgment of the state court was held to be a bar upon the principle of res adjudicata.

The judgment of the court below must be affirmed upon the defense of estoppel. This renders any consideration of the question of lien or no lien altogether unnecessary.