## EASTER OIL CORPORATION v. STRAUSS.

### No. 12694.

Court of Civil Appeals of Texas. Fort Worth.

June 4, 1932.

Rehearing Denied July 16, 1932.

Taylor, Muse & Taylor, of Wichita Falls, and Slay & Simon, of Fort Worth, for appellant.

Fischer & Fischer, of Tyler, for appellee.

CONNER, C. J.

J. C. Strauss instituted this suit in the Eighty-Ninth district court of Wichita county, seeking to recover a judgment against the Easter Oil Corporation for the balance alleged to be due upon a promissory note executed on the 1st day of October, 1928, in the sum of $4,500, and payable on demand, with interest at the rate of 6 per cent. per annum, and for 10 per cent. additional as attorneys' fees. The plaintiff alleged that the note was long past due and no part thereof had been paid except $225, which was paid on January 21, 1931; credit therefor being allowed in the petition.

The defendant in answer pleaded substantially that the note was not that of the corporation for the reason (1) that it had been executed by the president and secretary without authority by the board of directors to execute the same; (2) that Alleine Kelley, the president of the corporation, who executed the note as such, was at the time a married woman, the wife of Kork Kelley, and that the note had been executed without the knowledge or consent of her husband and without his participation in the transaction, and therefore the note was unenforceable; (3) that, while Alleine Kelley had been elected as president of the corporation, yet, when the directors were assembled in meeting, the plaintiff, who was vice president of the corporation, would

take charge of the meeting and preside over it, and that Alleine Kelley was president in name only, and hence unauthorized to bind the corporation; (4) that, if the defendant was ever indebted to the plaintiff, as evidenced by the note sued on, it has long since been fully paid, satisfied, and discharged, by reason that plaintiff, while acting as an officer of the corporation, induced its officers and agents to deliver to him checks and payments wholly unauthorized by the defendant corporation or its board of directors largely in excess of the amounts claimed, and hence the note had been discharged; (5) that the note sued on had been prepared by the plaintiff several months before its execution, and that Alleine Kelley for a long period refused to sign the same, but finally did so upon the representation of plaintiff that it was an obligation of defendant corporation, whereas in fact it was for borrowed money due the plaintiff.

To these pleas the plaintiff replied by supplemental petition that, if Alleine Kelley as president and Gordon West as secretary, who had executed the note for the corporation, did so without express authority of the board of directors of the corporation, they were at least impliedly authorized, in that they were the active officers and managers of the corporation, and transacted all of its business with the consent and acquiescence of the directors and stockholders; that the directors all knew of the indebtedness to plaintiff, and had full knowledge of the execution of the note after its execution, and they ratified the same, and at no time ever repudiated it as an obligation of the corporation; that if for any reason the court should hold that Alleine Kelley and Gordon West were not authorized either expressly or impliedly to execute the note, and the note was not an obligation of the corporation, then the plaintiff alleged in the alternative that he was entitled to a judgment for the money he had loaned the corporation with interest at the rate of 6 per cent. per annum from the date of loaning the same, setting out specifically the dates and amounts advanced by the plaintiff to the corporation, which aggregated $4,500.

The defendant filed a supplemental answer in which it reiterated practically the same matters that it alleged in its first amended original answer as to the lack of authority on the part of the president and secretary, and in addition thereto alleged that plaintiff had sold his stock in the corporation, receiving therefor $32,000, and that R. S. Allen, a stockholder, had put $60,000 in the corporation, and had never drawn out anything; that H. E. Clark, another stockholder, had put $70,-000 in the corporation, and had never drawn out anything; and that Alleine Kelley and her husband had put in valuable tools and equipment, and had never drawn anything out of the proceeds; and that hence plain-

tiff should not be permitted to collect his indebtedness at this time, especially in view of the fact that defendant owed large sums of money to its creditors and that plaintiff's debt should not be paid until the other creditors were satisfied, etc.

When the case was called for trial, the defendant, in order to be allowed to open and conclude the case as to the introduction of the testimony and the argument, filed his admission of plaintiff's cause of action as set forth in the petition, except so far as it may be defeated by the facts of the answer constituting a good defense.

Upon the conclusion of the evidence the court, upon a motion of the plaintiff, gave a peremptory instruction to find in plaintiff's favor for the amount due on the note, with interest and attorneys' fees as sued upon. The jury so returned its verdict, and the court thereupon entered judgment in favor of the plaintiff for the sum of $4,409.22, with interest thereon at the rate of 6 per cent. per annum from the date of the judgment.

The defendant filed a lengthy motion for new trial, urging numerous errors, which was overruled, and to which ruling the defendant excepted and has duly prosecuted this appeal.

■ For reasons hereinafter stated, we will but briefly discuss, several of the questions materially relating to the trial of the case as presented below and as presented here on appeal. One of appellant's defenses presented below and urged here is that the note declared upon by the plaintiff was of no force and effect because executed by Alleine Kelley, a married woman without the joinder of her husband. As to this it must be said that, whatever may be the rule in other jurisdictions, it has been expressly provided by our Legislature that: "Charters may be subscribed by married women who may be stockholders, officers and directors thereof; and their acts, contracts and deeds as such stockholders, officers and directors shall be as binding and effective for all the purposes of said corporation as if they were males. The joinder and consent of the husband and privy examinations separate and apart from him shall not be required." Article 1306, Rev. Civ. Statutes.

As shown in the evidence, one of the by-laws of the corporation duly adopted reads in part as follows: "The affairs and business of the corporation shall be under the management and control of a board of directors of seven members. * * . * "

■ It is undisputed that the note in question was executed and delivered by the president, Alleine Kelley, without having been so directed or authorized by a resolution or order of the corporation's board of directors, hence the authority for the execution

and delivery of the note to the plaintiff must rest upon the evidence of appellee's alleged ratification of those acts by the manners of the board of directors or upon such general authority as must be ascribed to the president and secretary of the corporation who signed the note. While it may be conceded that the president and secretary would have authority by virtue of their offices to create obligations in minor matters arising during the performance of their duties, we are not prepared to hold that such inherent authority extends to the acts under consideration. Appellee himself testified that the note was required by him to cover moneys advanced long before the execution of the note, and there is nothing in the evidence to indicate that the board of directors as such, or any majority thereof, requested or consented to any such advances, amounting in all to some $4,500. It further appears in the evidence that Alleine Kelley long objected to and refused to execute the note, but finally did so, acting under the belief that it was to cover indebtedness for well drilling material theretofore procured from the Strauss-Allen corporation, of which the plaintiff was the president and manager. We do not think the issue of ratification presented by the plaintiff was conclusive, however, and hence should not have been taken away from the jury by the court's peremptory instruction. The charter provided for seven members who were authorized, as we have seen, to manage and control the business, and we do not feel prepared to say that as a matter of law the directors Allen, Clark, and Kork Kelley approved the act of Mrs. Kelley and the secretary in executing and delivering an obligation in a large amount that was immediately enforceable against the property of the corporation. On the contrary, in the statement of facts reference is made to a meeting of the directors of the corporation in which at least a majority of the directors were present, and in which it was urged or suggested that the plaintiffs Strauss, Allen, and Clark be not paid until after all the general creditors had been satisfied.

■■■ It is urgently insisted in behalf of appellee that appellant's admission at the opening of the trial had the effect to preclude it of all relief in its behalf. And in this court it is insisted that the effect of the admission was to admit that the note declared upon was the note of the corporation; that it was valid, due, and unpaid, and hence that the court could do nothing else than give the peremptory instruction, citing Dashiel v. Lott (Tex. Com. App.) 243 S. W. 1072; Smith v. Traders' National Bank, 74 Tex. 541, 12 S. W. 221; Sanders v. Bridges, 67 Tex. 93, 2 S. W. 663; Smith v. Frost (Tex. Com. App.) 254 S. W. 926; Rector v. Evans (Tex. Com. App.) 288 S. W. 826; Finger v. Whitworth (Tex. Civ. App.) 294 S. W. 285; Ferguson v. American Bank & Trust Co. (Tex. Civ. App.) 13 S.

W. (2d) 459. The record indicates that the peremptory instruction of the court and the judgment were based largely on such contention, for the judgment recites the fact of the admission under the rule, and declares that under the undisputed evidence the plaintiff was entitled to a judgment upon the note sued upon.

We do not feel prepared, under the circumstances and pleadings in this case, to adopt the construction of the rule insisted upon in behalf of appellee. The answer of the defendant, among other things, was in effect a plea of non est factum. The effect of such a plea was to cast upon the plaintiff the burden of proving that the note in fact was the note of the corporation, and a reasonable construction of the rule would seem to be in such case that the admission merely relieved the plaintiff of the burden of so proving in the first instance, thus casting upon the defendant the burden of proving by a preponderance of the evidence the fact alleged in the plea that the note was not the note of the corporation, plaintiff thereafter only being required by its evidence to overcome in weight or balance the evidence relied upon by the defendant to show that the note was in fact not the act of the corporation. The defendant further pleaded that, if it was ever indebted to the plaintiff as evidenced by the note sued on, the note had been fully paid and satisfied. These pleas, we think, should be construed as in the nature at least of pleas in confession and avoidance. See Johnson v. Sherrill (Tex. Civ. App.) 271 S. W. 276; Wolff v. Cohen (Tex. Civ. App.) 281 S. W. 646; Swift & Henry Livestock Commission Co. v. Mounts (Tex. Civ. App.) 295 S. W. 932. Therefore, even under the strict rule invoked in behalf of appellee, the court was precluded from giving the peremptory instruction to the jury if there was any evidence even tending to show that the note had been discharged. There was evidence tending to show that the corporation prior to the execution of the note had received from the Strauss-Allen Corporation, of which the plaintiff was a co-owner, certain drilling material for which Alleine Kelley testified she thought she was giving the note. Appellee, however, only testified that he presumed that the material referred to in the testimony of Mrs. Kelley had been paid for by the corporation. So that we are inclined to give a more liberal construction of the rule than that insisted upon by appellee and to hold that, even upon the theory upon which the case was tried, the court erred in giving the peremptory instruction. See Smith v. Traders' National Bank, 74 Tex. 541, 12 S. W. 221; Dashiel v. Lott (Tex. Com. App.) 243 S. W. 1072.

We have thus far undertaken to dispose of the case briefly on the theory on which it was tried below, and, in accordance with our conclusions as thus far expressed, the judgment

below at all events would have to be reversed and the cause remanded for another trial. We have concluded, however, that, under the law and the undisputed facts as we find them, the case was disposed of upon an erroneous theory, and that appellee is not entitled at this time at least to any judgment whatever against the appellant corporation, and hence that the court should have given the peremptory instruction in defendant's favor, as was duly requested.

The Easter Oil Corporation was organized on or about the ———— day of April, 1928. The minutes of the first meeting of the board of directors appear to have been on the 25th day of April, 1928. The following were directors of the corporation: Reese · S. Allen, J. A. Strauss, Gordon T. West, Jinks Smith, A. T. Kelley, Kork Kelley, H. E. Clark. Kork Kelley was an oil well driller, and owned equipment of the necessary kind, and he and his wife, Alleine Kelley, had secured the right in two oil leases of 80 acres each, situated in the Wichita county oil territory. They were, however, without the necessary cash to drill a well on either of the leases, and they approached Mr. Allen seeking to induce him to put in the necessary means to drill a well on one of the leases. Mr. Allen in turn communicated with Mr. H. E. Clark and later with appellee, Strauss, and it was finally agreed that the Kelleys were to put in the two 80-acre leases and the use of their equipment and drill the initial well, and Clark and Allen to furnish the necessary money, the Kelleys to have a one-third interest, Clark a one-third, and Allen a one-third. At this state of the negotiations, Allen approached appellee, Strauss, and it appears, quoting from the testimony of Strauss himself, that:

"They (Clark and Allen) first talked about incorporating at $6,000 and I said you can not drill a well for $6,000, and this man Clark said, well we have the casing and this derrick, and this woman, calling her Alleine, drilled a well in the pasture and it did not cost but $6,000 and I said all right go ahead but I don't want anything to do with it, he said 'well, Strauss, do you think with that equipment we could drill a well for $10,000?' And I said, 'You possibly could'. And he said 'I believe I would be willing to try it for $10,-000.' And I said I would not want to underwrite it but if you incorporate it for $10,000 and want me to, I will take one-fourth of the interest Mr. Allen has, if he wants me to.' That was before it was incorporated. * * *

"Q. And you were one of the original directors in the corporation? A. Yes, sir.

"Q. In the charter? A. Yes, sir."

Appellee testified that he paid $800 in cash for one-fourth of Allen's one-third of the corporation stock. We quote the following further testimony given by appellee Strauss:

"Q. Now after you started that, after you incorporated and bought the stock that you had agreed to buy from Allen, isn't it a fact that all of you put more money into this, whether you call it a loan or what not, before you got production you put in more money? A. I think that is true, they got a fishing job before they got a paying well, it took more money than it ordinarily would have, and they had to have some money, and Mr. Clark and Mr. Allen had loaned them considerably more than I, they were both wealthy men and I am a man of very ordinary means, and when they were out of town, both of them, and the company had to have ready money for the labor and fishing tools, that is when they approached me for the loan and here is the checks that were issued by me to them out of my personal account and this material that you talk about that I took out, that was this stuff that was bought from the Strauss-Allen Corporation at fifty cents on the dollar.

"Q. The Strauss-Allen Corporation that was a company owned by Mr. Allen and yourself and some other people? A. Yes, sir.

"Q. And that company put that material into the corporation—who put that stuff into the corporation? A. Well it was this way, Mr. Allen and I practically owned the Strauss-Allen Corporation. * * * We put those things in at exactly what we paid for them and then they paid for them at fifty cents on the dollar, that is the basis we worked on. * * *

"Q. When you agreed to go in the Corporation and buy one-fourth of the one-third of the stock, did you agree with anybody that you would furnish the money to the corporation if the capital stock of the corporation fell short of enough to drill the well? A. Certain not; if it had not been for the fishing job it would not have been necessary.

"Q. Was it contemplated by all parties at the time that they would be able to drill the well for $10,000? A. Yes, sir, because we had a certain amount of casing and together with other things we had on hand, and the rig of course, he and she thought they could drill it; they just happened to the fishing job, and did not have enough money. They had to get the stock holders to advance money to finish the well."

The evidence shows that appellee advanced from time to time sums aggregating the amount for which the note declared upon was given under circumstances indicated ·by the following quotation from his testimony:

"Q. Now who applied to you for these particular loans? A. Gordon West, Kork Kelley and Mrs. Kelley.

"Q. All three? A. Yes, sir.

"Q. All three were present every time? A. No, sir, I would not say that; I don't remember about that in fact.

"Q. Well was all three of them ever present

when they applied to you for a loan? A. I don't remember that but I remember that all of them asked for a loan; I remember that it was pretty hard to dig up and somebody had to dig it up.

"Q. Were you loaning it to the corporation? A. Yes, sir.

"Q. You would make the loans that you are talking about upon the request of either Mrs. Kelley or Gordon West or Kork Kelley? A. Yes, sir.

"Q. You knew that the corporation, through its board of directors, never authorized anybody to borrow this money? A. Never heard that question raised until we came up here; never occurred to me that they would have the gall to try to deny it.

"Q. You don't mean that the board of directors had had anything to do with the borrowing money from you? A. No, sir, it wasn't necessary.

"Q. You mean to tell the jury, so far as you know, that the board of directors of that corporation had nothing to do with the loan? A. Well now, as for that, the majority of the board of directors were Mrs. Kelley, Gordon West, and Mr. Allen, and Mr. Allen had said to me once that he thought that I ought to advance some money, that he and Clark had advanced a lot and he had said he thought I should advance a little."

The only reference to a directors', stockholders', or creditors' meeting that we find is one in which the Kelleys and perhaps Clark and Allen and certain creditors expressed the will to pay the general creditors of the corporation 5 per cent. of their demands until fully discharged out of the dividends before anything was advanced or paid to Allen, Clark, or Strauss on their advancements. It further appears without dispute that, after the fishing job had been overcome, the Kelleys continued and brought in a good well; that parties from Tulsa, Okl., offered for the properties of the corporation $450,000. This offer was not accepted. $140,000 was then offered for the stock owned by Allen and Strauss. Allen was not willing to accept that; Strauss resigned his position as vice president of the corporation, and sold his stock to a Mr. Ferguson for $32,500. During the fishing job and drilling operations appellee testified that he put in about as much time as did Mrs. Kelley on the lease. In this particular his language while testifying was as follows: "Well I was out there too a good deal of the time, after they had had the fishing job trying to help them straighten it out, I was out there as much as she was, I know that I was out there until nearly midnight the night the well came in."

We do not want to be understood as holding that a stockholder in a corporation may not become a creditor thereof, but, as it seems to us, it is apparent that the relation of appellee to the corporation was not that of an ordinary stockholder who has loaned to the corporation money and received the corporation's obligation therefor. One of the definitions of a "loan" that we find in Black's Law Dictionary is the following: "The loan of money is a contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrowed."

While appellee insists that the sums advanced by him were loans, it is clear that they were mere advances to certain co-owners of the corporation for the purpose of saving sums paid for stock and to bring about the profit in contemplation at the time of the organization of the corporation. Appellee was one of the parties engaged in the creation, existence, and prosecution of a joint undertaking to develop the oil leases in question with the hope of profit.

In 15 R. C. L. p. 500, pars. 1 and 2, under the title of "Joint Adventures," it is said: "* * * The relation of joint adventurers is governed by the principles which constitute and control the law of partnership, and reference should be had in this connection to the treatment of that law contained in this work.

"While it is true that at common law co-adventurers in an enterprise were recognized in courts only when the element of partnership was disclosed and on proof of the essentials of a partnership, this is not the law at the present time, and, although courts in modern times do not treat a joint venture as identical with a partnership, it is so similar in its nature and in the contractual relationships created thereby that the rights as between the adventurers are governed practically by the same rules that govern partnerships."

See, also, Texas Jurisprudence, vol. ——, p. ——, Title "Joint Adventures."

In Thornton on the Law of Oil and Gas, vol. 1, p. 520, § 355, it is said: "If two or more owners of a mine unite in working it, without any partnership agreement, the act of working it together creates a mining partnership; and the same is true of two or more holding interests in a lease of mining property. 'Whatever may be the rights and liabilities' of tenants in common of a mine not being worked, said the Supreme Court of California, 'it is clear that when the several owners unite and cooperate in working the mine, then a new relation exists between them, and, to a certain extent, they are governed by the rules relating to partnership. They form what is termed a mining partnership, which is governed by many of the rules relating to ordinary partnerships, but which has also some rules peculiar to itself, one of which is that one person may convey his

interest in a mine and business without dissolving the partnership. Still there may be a partnership in the working of a mine, subject to the rules relating to an ordinary partnership in trade. And this relation may be constituted either by express stipulation or by implication deduced from the acts of the parties.' "

In Thompson v. Duncan (Tex. Com. App.) 44 S.W.(2d) 904, 907, it is said in an opinion by Justice Leddy:

"Courts. do not treat a joint venture as identical with a· partnership, yet it is universally held that such relation is so similar in its nature to a partnership and in the contractual relation created thereby that the rights as to the members are governed by substantially the same rules that govern partnerships"—citing authorities.

In Thompson on Corporations, 1922 Cumulative Supplement, p. 770, § 4462, it is said: "The relation of the stockholder to the corporation 'is purely contractual. The stockholder sustains a three-fold relation; to the corporation as a legal entity, to his fellow stockholders and to the creditors of the corporation. * * * The ownership of the stock confers the right to participate in the immunities and benefits of the corporation and in the choice of its officers and the management of its concerns, to share in its dividends and profits and to receive an aliquot part of the proceeds of the capital on the winding up and termination of the corporation.· * * * The stockholders stand on an equal footing both as to benefits and burdens. A fiduciary relation exists between the stockholders themselves and this imposes the duty to act honestly and in good faith toward each other in the exercise of their powers within the corporation."

And again on page 773, § 4463: "A stockholder, as such, is not a corporate creditor, and hence is without any distinct right to any part of the corporate property and this though he may own a majority of or all the stock. His right is to share in the net profits and a proportion of assets of the corporation after payment of debts on the dissolution of the corporation."

In Thornton on the Law of Oil & Gas, p. 472, § 320, it is said: "Under a contract specifying their individual interest in a leasehold and the business of operating it by tenants as co-partners in pumping and selling the oil produced from a well thereon, a bill for an accounting is the exclusive remedy for the settlement of their accounts."

In the case of Stephenson v. Luttrell, 107 Tex. 320, 179 S. W. 260, it is said, quoting from the headnotes:

"One tenant in common who for preservation of the value of the property has been compelled to expend money in improving it has the right to recover from his cotenant the proportion of the reasonable expense so incurred corresponding to such cotenant's interest, and enforce the same as a lien against the property.

"The amount which a tenant in common may recover from his cotenant for expenses in necessary improvements made is such part of the money actually expended therein as is proportionate to the cotenant's interest. He can not make profit from the transaction, nor charge his cotenant with more than such proportion of the expense by reason of the value of the latter's interest being increased beyond that amount."

In Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, it is held that a defendant, claiming to be sole heir, who had paid from his private means to protect the estate, was not precluded from calling on his cotenants for contributions when they sought partition by the fact that he was administrator and might have paid from the funds of the estate and been allowed a credit in its settlement. See, also, Anderson v. Clanch (Tex. Sup.) 6 S. W. 760; T. & P. C. & O. Co. v. Kirtley (Tex. Civ. App.) 288 S. W. 619; Roberts v. Roberts (Tex. Civ. App.) 278 S. W. 937; Durham v. Scrivener (Tex. Civ. App.) 259 S. W. 606; Magruder v. Johnston (Tex. Civ. App.) 233 S. W. 665.

We conclude that appellee's relation to the enterprise or adventure under consideration was, under the authorities, in the nature of a cotenant or partner. As such, he was not entitled, under the rules governing those relations to himself, to recover of the corporation his indebtedness until after the payment of the independent creditors of the corporation, the record indicating that at the time of the trial the corporation was indebted to outside creditors or creditors not interested in the enterprise to the extent of the sum of $60,000. Appellee's assignee, Ferguson, is evidently entitled to his proportionate part of all dividends that may have or can be declared after the assignment and to have his rateable share of the property upon dissolution of the corporation. Apparently, at least, appellee, by the sale of his stock and the receipt of profits amounting to more than $25,000 over and above all sums paid by him for stock and his advances to secure protection, affected his purpose and anticipated reward in joining Allen, Clark, and others in the enterprise. At all events, whatever right, if any, he may have against his cotenants or partners in the adventure, he has no right of recovery at this time against the appellant corporation.

We infer from the evidence as a whole and from the argument of counsel on the submission of this cause that the properties involved are valuable and the leases susceptible of profitable development, and that the present indebtedness of some $60,000 has been incur-

red by drilling efforts after the first well was brought in and because of the depressed prices of oil, and we think it would be inequitable to give appellee, under the circumstances of this case, the right of an immediate enforcement of the judgment as sought and as rendered, and thus perhaps bring about a receivership and utter loss to Allen and Clark and the Kelleys of all they have put into the adventure.

We finally conclude that the court erred in refusing appellant's request for a peremptory instruction in its favor and that the judgment below should be reversed and now and here rendered for the appellant corporation.

### On Motion for Rehearing.

The able counsel for appellee again stress their view of the effect to be given to appellant's admission for the purpose of being allowed to open and conclude the argument. The substance of appellee's contention in this respect is that appellant was without any pleading in the nature of a confession and avoidance of appellee's cause of action as presented in his petition, and that therefore under the authorities the court, regardless of the evidence, was authorized to give the peremptory instruction for appellee as was later requested. If it be assumed that appellant was without a maintainable defensive plea, as appellee insists, the orderly procedure would have been for him to at once present his request and the court to at once give the peremptory instruction instead of waiting until after going through a tedious trial.

The admission was filed on the 18th day of May, 1931, at the beginning of the trial. In so far as disclosed by the record, no request was made in behalf of appellee at this time for a judgment in his favor on the strength of the admission. On the contrary, the record shows that the appellant was permitted, and in fact did proceed, to open the case with evidence in its behalf, to which due reply was made in behalf of appellee, and both parties closed their case. It was at this point, to wit, on May 20, 1931, that attorneys for appellee in his behalf presented a request for a peremptory instruction in his favor. And it was then at this point in the proceedings, and not before, that the court, as indicated by the recitals in the judgment, adopted the view of the effect of appellant's admission now stressed in behalf of appellee.

Counsel for appellant evidently had no such view of the effect of his admission as finally insisted upon and adopted by the court. It cannot be assumed that such counsel would deliberately and intentionally admit every fact necessary for appellee's recovery, regardless of the defenses set up by him and the evidence offered in support of such defenses. And it seems to us that the delayed ruling of the court, which in effect adopted appellee's construction of the admission, placed appellant in a disadvantageous position. Had an earlier opinion or ruling by the court been given, appellant could and perhaps would have withdrawn the admission and thus avoided the effect finally given to it. Under appellant's pleas and the circumstances, we originally felt and continue to feel unwilling to give appellant's admission the effect that appellee now insists should be given to it. This is especially true, in view of appellant's pleas, including the plea of payment, and of the fact, as we view the evidence, that the proof is altogether insufficient to show that the note sued upon by appellee was either authorized or ratified by the appellant corporation as such.

The language of rule 31, by virtue of which appellant asserted its right to open and conclude, is not absolute. It provides that the plaintiff shall have the right to open and conclude, both in adducing his evidence and in the argument, if he admits before the trial begins "that the plaintiff has a good cause of action as set forth in the petition, except so far as it may be defeated, in whole or in part, by the facts of the answer constituting a good defense, which may be established on the trial. * * *" In terms the rule apparently excepts from the conclusive effect of the admission all facts pleaded in defense which will legally defeat in whole or in part the plaintiff's case. Giving the term "except," as used in the rule, its ordinary, plain meaning, it is at least not unreasonable to conclude that any state of facts which under our laws will constitute "a good defense," that "may be established on the trial," takes from the admission the final and conclusive effect appellee insists upon, thus leaving the burden of proof on the whole case upon the party making the admission as contemplated by article 2183, Rev. Statutes, which in part declares that "the party having the burden of proof on the whole case shall be entitled to open and conclude the argument. * * *"

In this connection we wish to call attention to the case of Smith v. Traders' National Bank, 74 Tex. 541, 12 S. W. 221, 222. In that case Smith was sued on a promissory note executed by him which the bank alleged had been assigned to it in due course of trade for a valuable consideration. Smith in answer impeached the validity and enforceability of the note on the ground that the consideration therefor had failed and that the plaintiff received the transfer of the same with notice of his defense. There, as here, the defendant made the admission provided for in rule 31 for the purpose of being permitted to open and conclude in presenting his evidence and argument. There, as here, the plaintiff insisted that the ad-

mission precluded the defense,. and requested a peremptory instruction in its favor which the court gave. On appeal, in disposing of the assignment of error directed to the action of the court in giving the instruction, our Supreme Court, in an opinion written by Judge Gaines, one of our ablest law writers, held that there was some evidence in support of Smith's defense, and that the trial court erred in giving the peremptory instruction. We quote from that opinion the following references to rule 31:

"We think the court below erred in his conclusion as to the scope and effect of the admission. It is a general rule of the common law that a party who has the affirmative of the issue has the right to open and conclude. The admission in this case is in the language of rule 31 of rules of practice for the district courts. The manifest purpose of this rule was to secure to a defendant the right to open and conclude when upon the real issues in the case the burden. of proof rests upon him; that is to say, when his defense is in the nature of a confession and avoidance of the plaintiff's action, he is permitted to admit the prima facie case of the plaintiff although it is denied by his pleadings, and to open the case by introducing evidence to establish the affirmative defense he has set up. The rule is intended to secure a valuable right and is just, and it should have a reasonable and practicable application. To construe it so as to accomplish in a reasonable and practical manner its object, an admission made in the very language of the rule must be construed to mean that the defendant admits every fact alleged in the petition which it is necessary for the plaintiff to establish in the first instance to enable him to recover; but does not admit allegations in the petition which merely deny new matter alleged in the answer, the burden of proof of which is upon the defendant. Any other construction would enable the plaintiff to deny the defendant the right to open and conclude upon his affirmative defense by simply amending the petition, as was done in this case, and alleging the contrary of the defenses set up in the answer.

"The answer in this case set up a defense in confession and avoidance of the action. 1 Chit. Pl. 515. The plaintiff was not bound to allege in its petition that it became the holder of the note for a valuable consideration without notice. It was incumbent upon the defendant, in order to make his defense, to show the contrary. He was bound to allege and prove the want of consideration, and that the plaintiff had notice when it became the holder of the note. In admitting the plaintiff's cause of action, 'except in so far as it may be defeated by the facts of the answer,' etc., he does not purport to admit the allegations of the petition, but merely to admit that the plaintiff has a prima facie case, and expressly declines to admit any fact inconsistent with the new matter alleged in his answer."

Appellee assumes that appellant's pleas are not in nature such as to prevent or avoid the conclusive effect of his admission. In other words, that they are none in the nature of pleas in confession and avoidance. By reference to our original opinion, it will be seen that appellant pleaded that the note had been executed without authority, or that, if the corporation had ever been indebted to the plaintiff as evidenced by the note declared on, it had been paid and discharged. To these pleas appellee replied that, if the note had been executed without authority, it had been ratified by the corporation, or, if in fact the note was not that of the corporation, it represented moneys loaned to the corporation for which he prayed for judgment. It is to be remembered that, under established rules of pleading in this state, a defendant may plead as many lawful defenses as he chooses, even though such pleas be inconsistent, and that the language of the rule excludes from an admission thereunder any and all defenses well pleaded and established by evidence that will defeat the plaintiff's cause of action. We take the following from 49 C. J. p. 294, § 361:

"Any fact, which avoids the action and which plaintiff is not.bound to prove in the first instance in support of his cause of action is matter that may be pleaded in confession and avoidance at common law, or as new matter under the code practice. It means matter extrinsic to the matter which is set up in the complaint as the basis of the cause of action, and must consist of affirmative matter such as, if true, would defeat the cause of action set up in the complaint. New matter is matter for the defense not provable under a denial, that is, facts outside of an issue raised or that could have been raised by denial, and, hence, any matter embraced in an issue raised, or in any issue which defendant might thus have raised, is not new matter, although the fact that a fact may also be proved under a general denial may not for that reason preclude its being pleaded as a defense. Where facts are alleged in the complaint which are not germane to the relief asked, they are not thereby divested of their character as new matter should defendant wish to use them as a defense. Matters, among others, that have been considered proper to be made available as defenses under a plea in confession and avoidance or as new matter are: Account stated, act of God, alteration of instrument, assignment of cause of action, assumption of risk, bad faith on part of agent, breach of contract or warranty, conditional liability, contributory negligence, discharge, dual or secret employment of

agent or broker, election of remedy, estoppel, exception or proviso of statute, failure, illegality, or want of consideration, forfeiture, fraud or deceit, illegality of contract sued on, infancy, justification, mistake, no joint liability, non-performance of condition precedent, novation, performance or part performance; res judicata, son assault demesne, laches, or statute of limitations, usury and waiver."

The quotation is supported by numerous decisions cited in the footnotes, and seems to be in harmony with the more liberal construction of rule 31 that we are disposed to adopt.

Moreover, in addition to what we have said, we yet have in this case appellant's plea of "payment" of the note upon which appellee declares. This, in the most circumscribed view of the subject, is one of confession and avoidance. There was testimony on the part of Mrs. Kelley, as we view it, tending to show that she mistakably signed the note declared upon thinking it was for certain drilling material received from the Strauss-Allen Company and Mr. Kelley testified that the material referred to was paid for by the Strauss-Allen Company taking the necessary funds out of the funds of the Easter Oil Company. This evidence we think was sufficient to raise the issue, and hence the court erred in his peremptory instruction. It is insisted, however, in behalf of appellee, that the court sustained appellee's special exception to that section of the appellant's answer which set up the plea of payment, and that no assignment of error has been presented to this ruling. The record does disclose a ruling of the court sustaining the special exception referred to, but it seems to have been waived or abandoned in that, as already stated, the parties were permitted without objections, so far as we recall, to introduce evidence pro and con in support of and against the issue of the payment, and appellant is in no position to assign error to the court's action in sustaining the exception.

We will further add that we think the undisputed evidence shows that appellee was not a creditor of the corporation in the capacity in which he sues, but on the contrary was a mere coadventurer with Clark, Allen, and others in the drilling enterprise developed in the evidence, and conclude that the court committed fundamental error in

giving the peremptory instruction and in rendering the judgment that was rendered. In support of the conclusion last expressed, we wish to quote the following from volume 2 of Rowley's "Modern Law of Partnership," § 975, not available to the writer when writing the original opinion in this case, to wit:

"A joint adventure may be defined as an association of two or more persons to carry out a single business enterprise for profit. It is said a 'venture' is an undertaking attended with risk, a business speculation. And a 'coadventurer' is one who takes part with others in a venture or adventure. In its general nature a joint adventure is similar to a partnership, and it is governed by practically the same rules of law, although it is held not to be identical with partnership. It has been held that a joint adventure is merely a partnership of limited scope and duration. 'A joint adventure is a limited partnership, not limited in a statutory sense as to liability, but as to its scope and duration, and under our law joint adventures and partnerships are governed by the same rules.' It has been said that one difference between a partnership and joint adventure is that 'a dissolution for proper cause may be effected by his coadventurers against a defaulting associate without a judicial decree,' but in many jurisdictions this same rule applies to partnerships. It is said that the distinctions between a partnership and joint adventure are that a joint adventure relates to a single transaction, and a partnership to a general business of some particular kind, that a corporation may become a party to a joint adventure, though not a partner; that a party to a joint adventure may maintain an action at law to recover profits or advances, or enforce contributions or for breach of contract. However, the Uniform Partnership Act, where adopted, has removed the first distinction by permitting a corporation to become a partner, and one partner may sue another at law on matters connected with partnership affairs as to which an accounting is not necessary, or as to a single unadjusted item, so that it seems there is no real distinction between a joint adventure and what is termed a partnership for a single transaction. Though a joint adventure is confined to one transaction, yet this may extend over a term of years."

We finally conclude that the motion for rehearing should be overruled, and it is so ordered.